Dudley *v.* Reynolds.

GILFORD DUDLEY *vs.* GEORGE A. REYNOLDS.

Section second of "an act regulating the interest of money," (*Laws* 1855, *p.* 433,) is clear, definite and explicit, that any rate of interest, however extortionate, whether the money for which such rate was paid, be due or to become due, might be agreed on by the parties in writing, and their contract has the sanction of law, and the court must so declare it and apply it to the case under consideration.

It is only when all other means of ascertaining the legislative intention fail, that a court may look to the effects of a law ; then their interpretation becomes a sort of judicial legislation.

A note in words following , "$225. "Seven months after date, for value received, I promise to pay G. A. Reynolds or order, the sum of two hundred and twenty-five dollars, with interest at the rate of five per cent. per month until paid. Lawrence, February 9th, 1859. (Signed) GUILFORD DUDLEY." binds the obligor to pay two hundred and twenty-five dollars seven months from date, and to pay five per cent. per month for the use of said sum until the debt is paid.

The law authorizes such a contract.

A parol agreement by the parties to a note, made after its maturity, that if the maker will pay a certain sum thereon, which sum was then paid, that the remaining sum should draw a rate of interest less than that specified in the note, is without consideration and not binding.

The facts of the case appear in the opinion of the court.

*Douthitt & Greer*, for plaintiff in error.

*Case & Case*, for defendant in error

Plaintiff's first ground of error is, that the court erred in sustaining the demurrer of Reynolds to the second defense set

forth in the answer of Dudley below, to-wit: That after the maturity of the note, Dudley paid Reynolds one hundred and seventy-five dollars, and that in consideration of said payment, Reynolds agreed to reduce the rate from five per cent. to two per cent. per month. For such an agreement there was no consideration. (*Chitty's Con.*, 52, 54, 55.)

The payment of a debt by a debtor is not a sufficient consideration to support a promise. (*Note* 2, *Chitty*, 54.)

That court erred in computing interest at five per cent. per month from maturity.

Parties might agree upon any rate. (*Act* 1855, § 2 *p.* 433.) Then, does the contract specify any rate beyond the statutory rate after the maturity? Most certainly, if the words, "until paid," have any signification, for, without them, Reynolds could have recovered interest at five per cent. per month until maturity. Therefore, the words, "until paid," must mean, if anything, that Dudley was to pay interest at that rate until rendition of judgment, or until the money was actually paid to Reynolds. That they had this meaning is clearly shown by the contract, and was well understood by Dudley, as shown by his pleadings, for he says that after the note was due, he paid one hundred and seventy-five dollars, and in consideration thereof Reynolds was to reduce the rate from five per cent. to two per cent. per month, acknowledging that the note was drawing five per cent. after maturity, instead of the statutory rate, as now contended. The maxims which govern the exposition of contracts are simple and consistent, and were calculated to effect their object, viz. : to do justice between the parties to the agreement, by enforcing performance thereof, according to the *sense* in which they mutually understood it at the time it was made. (*Chitty's Contracts*, 76.) Contracts are to be construed according to the general intent appearing from the language used in them. (10 *Vetmont*, 567 ; 11 *id.* 583 ; 6 *B. Munroe*, 612.) The language used by a party to a contract *must* be construed, as he sup-

Dudley *v.* Reynolds.

posed the other party had a right to understand it. (*Gunison ·s. Bancroft*, 11 *Vt.* 493.)

When the language of an agreement is plain and unequivocal, there is no room for construction, and though the party may have misapprehended it, or it may not express his real intent, yet it *must* be carried into effect according to its plain meaning. (6 *Barr.*, 41; 4 *Gillman*, 586.)

Construction *must* be liberal. (*Chitty*, 81.) Construction *shall* be favorable, so that the agreement may, if practicable, be supported. (*Chitty*, 82.) And as the meaning to be put on a contract is that which is the plain, clear and obvious result of the terms used therein, so those terms are to be understood in their plain, ordinary and proper sense. (*Chitty*, 83.) Construed most strongly against Dudley, and in favor of Reynolds. (*Chitty* 85; *see also* 86, *note* 3; *also* 22 *Howard*, 118; 11 *California*, 18; 2 *California*, 598; 6 *id.*, 130.)

By the Court, KINGMAN, J. On the 16th day of April, 1861, the defendant in error commenced his action in the district court of Shawnee county, upon the following note:

"$225. Seven months after date for value received, I promise to pay G. A. Reynolds or order, the sum of two hundred and twenty-five dollars, with interest at the rate of five per cent. per month until paid. GUILFORD DUDLEY.

"Lawrence, February 9th, 1859."

There was a credit on the note of one hundred and seventy-five dollars, paid October 19th, 1859, which was after the note became payable. Dudley, in his answer, set forth two grounds of defense:

First. A general denial.

Second. That on the 19th day of October, 1859, Reynolds agreed that if Dudley would then pay one hundred and seventy-five dollars on the note, that the remaining sum should draw but two per centum per month thereafter, instead of five per cent. per month, as stipulated in the note, and that he. the

defendant, did then and there pay the said sum of one hundred and seventy-five dollars on the note, in pursuance of the said agreement.

To the second clause of the answer Reynolds demurred. The court sustained the demarrer, to which ruling Dudley excepted.

The issue of fact made by the first part of the answer was tried by the court and judgment rendered for Reynolds. Dudley, after the issue of fact was found by the court, moved the court to compute the interest from the maturity of the note, at the rate of six per centum per annum.

The court overruled the motion and computed the interest at the rate of five per cent. per month from date until the time judgment was rendered, and gave judgment accordingly, to which Dudley excepted.

The first error complained of is the sustaining the demurrer to the second clause of the answer. We can see no error in this. There was no consideration moving from Dudley to Reynolds for the pretended agreement. Dudley did not do or promise to do anything more than he had already promised and agreed to do, than what he was already bound in law and good conscience to do. Therefore there was no consideration for a promise that was in itself of inferior character to the agreement already made by him. This principle has been too long and too well settled to receive any new light from us, or require the citation of any authorities to support it.

The second error complained of is the computation of interest at the rate of five per cent. per month after the note became due and payable. When the note was made, the statute as to interest was as follows:

"The parties may agree in writing for the payment of any rate of interest on money due or to become due on any contract." (*Laws* 1855, *p.* 433.)

It seems impossible to make the law clearer or more specific, allowing the parties to agree in writing, on any rate* of interest on money due or to become due.

It is not any part of the duty of a court to determine whether a law is a good or bad one, or whether its effects and consequences are beneficial or pernicious, if its terms are clear and undoubted. It is only when all other means of ascertaining the legislative intention fail, that as some guide, in applying so uncertain a law, a court may look to the effect of a law, and then their interpretation becomes a sort of judicial legislation.

But when the terms of a law are clear and precise, the only duty of a court is to declare the applicability of the law to any given case. When the legislature has expressed its will in plain and unambiguous language, courts are bound to say they meant what they have clearly expressed. And however obnoxious the interest law may be, and whatever may be its effects, it is clear, definite and explicit, that any rate of interest, however extortionate, whether the money for which such rate is paid be due or to become due, may be agreed on by the parties in writing, and their contract has the sanction of law and the court must so decide it, and apply it to the case under consideration.

Counsel for plaintiff in error insists that there is no agreement in the note sued on for the payment of interest on it after it became due, and sustain their view with reasoning very ingenious. We have examined the arguement so ably presented and the authorities cited with great care and anxiety, and have not been able to see that what parties have declared was their contract, was not what they agreed upon.

The argument of counsel is that there is no agreement for the payment of interest on the money after it became due. That on the first day after its maturity, Reynolds had an absolute right to the amount due for principal and interest, at the rate stipulated in the note, and nothing more. That there was no agreement that Dudley should have the money for a day longer, and the non-payment of it on the day after it became payable, gave Reynolds an undoubted right of action for

the money and interest, and his right of recovery, if he delayed his suit, would be only the amount of the note and the stipulated rate of interest till it became due. That by the non-payment of the note at maturity, the contract became broken, forfeited, and gone, and nothing remained to the party but his right of action against Dudley to recover damages for the non-performance of the contract.

It would give us great pleasure to see the case in the light in which the counsel presents it, but when the law allows any rate of interest to be agreed on in writing on money due or to become due, the only duty of the court is to see if the parties have so contracted.

If the construction be as is claimed by the plaintiff in error, the words in the note, "until paid," have no meaning. The note would have the exact legal effect claimed by the counsel if the words, until paid, were left out. The payee of the note would have the right to recover the face thereof, and five per cent. per month till due, and the six per cent. per annum thereafter, as a matter of law, but these words are in the note, and have a meaning; they declare for how long, whether before or after due, interest shall be paid at the rate of five per cent. per month, and that declaration is until paid.

To give to them the effect claimed, would be not to continue the words, but arbitrarily to declare that "until paid" means until payable.

The former means the discharge of a debt, the latter the time when it becomes due. Until paid means strictly until the discharge of the debt, while until payable means till the money is due. The meaning of these two phrases is, then, not only widely different, but absolutely inconsistent, each with the other. A debt cannot, at the same time, be paid and payable. The moment it becomes due it is payable, if at the same moment it is paid it ceases to be payable.

Shall we presume that the parties used the language of the note in any other than its correct and general meaning? Un-

Dudley *v.* Reynolds.

fortunately, few persons know better the difference between payable and paid, than the borrower and lender, the debtor and the creditor. If the debtor could, by construction of language, convert payable into paid, he would never be trubled about his debts. And if the creditor could, by a like construction, convert his claims that were payable into claims paid, he would seldom have occasion to come into court for his rights.

It is urged at bar that, by the non-payment of the note at maturity, the contract became "broken, forfeited and gone," and nothing remained to the party but his right of action against Dudley, to recover damages for the non-feasance of the contract.

Is it true, that by the non-payment of the note on the day that it became due, that it became "broken, forfeited and gone?" If it was forfeited and gone, no right of action was left for the obligee. The obligor had broken his promise, and a right of action accrued at once to the holder of the note.

But the contract was not forfeited; it remained valid, in full force and binding on the obligor. By that contract only could the obligee recover, and by it the obligor was to pay two hundred and twenty-five dollars in seven months, and to pay five per cent. per month for the use of the said sum, until the debt was paid. In other words, so long as he had the use of the money he would pay the stipulated compensation. It is true that the holder of the note has his right of action at the expiration of seven months; so also, has the obligor the power to stop the payment of so heavy a rate of interest by discharging the debt; but by continuing to use the money, he continues his obligation to pay the agreed rate of compensation for its use. Indeed, the language of the note is too clear to admit of construction. It is too plain; the obligor has stipulated, in unmistakable terms, that he will pay a certain rate of interest on his debt until it is discharged. The law authorizes such a contract.

The great object of all interpretation is to arrive at the intention of the parties contracting, as set out in their contract, where the terms of the contract are uncertain or ambiguous. (2 *Parsons, Con., p.* 12.) But there is no need and no room for construction where there is no ambiguity in the language of the note sued on. Neither the precise and exact definition of the words nor their acceptation in common and ordinary use will bear any other meaning than the one indicated. Either the court must strike out the words, "until paid," or must arbitrarily make them signify until payable, or give to the contract the only rational effect its language will bear. We have no choice; the last is our duty.

"To do more than this, would be to sacrifice to the apparent right of one party in one case, that steadfast adherence to law and principle which constitute the only protection and defense of all rights and all parties." (2 *Parsons on Con.*, 18.)

In considering this case, we have been led to examine, with care, the decisions upon the interest question in the second, third, and fourth *Minnesota Reports.* They conflict with each other as to the principles on which they are settled. The case of *Talcott vs. Marston*, (3 *Minn.*, 339,) which overrules the case of *Mason, Craig, et al., vs. Callender, Flint & Co.*, (2 *Minn.*, 350,) is directly opposed to the views we have presented; but we are unable to perceive the truth of the principle on which the court decides that case, and therefore cannot agree with its conclusion.

If we have not obscured, by an attempt to elucidate the plain law of the case under consideration, an analytical examination of the principle upon which the Minnesota case rests is unnecessary.

The decision of the court below is affirmed, and judgment rendered for the costs in this court against the plaintiff in error.