## J. W. Carey et al. v. James F. Starr and Wife.

### No. 889. Decided April 9, 1900.

**1. Vendor and Vendee—Superior Title.**

The title that remains in a vendor of land who reserves in his deed a lien for the purchase money is superior in the sense that the vendee can not assert his title against the vendor unless he has paid the purchase money, but except as security for the purchase money debt title is in the vendee. (Pp. 514, 515.)

**2. Same—Trespass—Timber Cutting.**

As to others than the vendee the rights of a vendor reserving a lien are those only of a mortgagor out of possession, and this rule applies to his right to recover for timber cut on the premises. (Pp. 514, 515.)

**3. Same.**

The vendor reserving a lien could maintain action against trespassers appropriating the timber on the land, but would be required to credit the amount of his recovery on the debt. (P. 515.)

**4. Same—Reconveyance—Cancellation of Debt.**

The amount of the debt secured by the vendor's lien constituting the measure of the vendor's rights in the land, when the debt was satisfied by a reconveyance of the land by the vendee the vendor could no longer maintain any action against the trespassers for timber cut thereon. (P. 515.)

**5. Same—Case Stated.**

Vendors of land retained in the deed a lien for part of the purchase money, with a provision against timber cutting by the vendees, disregarding which the latter cut and made ties, which they sold to a contractor who sold them to a railway company; thereupon the vendors rescinded the sale, received a reconveyance, and canceled the purchase money notes. Held, that no suit could be maintained against the contractor of the railway company for damages on account of the conversion of the ties. (Pp. 513,-516.)

**6. Same.**

The vendors in such case could acquire from their reconveying vendees (who were the wrongdoers) no right to sue, and a reservation to the vendors, in the contract of cancellation and reconveyance, of a right to sue the purchasers of the ties, could only apply to the right they had before, if any, which was satisfied by their reacquisition of the land. (P. 516.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Wood County.

*H. M. Cate* and *Moseley & Smith,* for plaintiff in error Carey, and *T. S. Miller* and *Head, Dillard & Muse,* for plaintiff in error the Missouri, Kansas & Texas Railway Company.—The resale by the vendees to Starr and wife, which was accomplished in September of 1897, was made without the knowledge or consent of Carey or the railroad company and

they could not be affected thereby, and their rights and responsibilities remained the same after the September transaction, to which they were strangers, as they had been before. Huffman v. Mulkey, 78 Texas, 559; Tom v. Wollhoefer, 61 Texas, 279.

It becomes of importance, then, to inquire what were the rights of Starr and wife against Carey at the time he innocently purchased and received the ties, which was somewhere between April, 1897, and August, 1897. The vendor of land in an executory contract for its sale retains a lien for the unpaid purchase money and also the superior title for the purpose of enabling him to work out such lien. Until default, his attitude toward the land is the same as the mortgagee out of possession before default. Pomeroy's Equity Juris., secs. 162, 163, 168; Summerhill v. Hanner, 72 Texas, 224; Stephens v. Motl, 82 Texas, 86; McCaslin v. State, 44 Ind., 151; Thompson v. Heywood, 129 Mass., 401; Kimball v. Darling, 32 Wis., 675; Taylor v. Collins, 51 Wis., 123.

It would appear, then, that at the time Carey purchased the ties Starr and wife stood in the relationship of mortgagees of the land, and, as such, their right at the time was to keep unimpaired their security. That they had any right to recover against the purchaser of timber from their mortgagors has been denied by many responsible courts in this country. Wilson v. Maltby, 59 N. Y., 127; Vanderslice v. Knapp, 20 Kan., 647; Alexander v. Shonyo, 20 Kan., 705; Peterson v. Clark, 15 Johns., 205; Clark v. Ryeburn, 1 Kan., 281.

It is, however, quite generally held that the mortgagee has the right of action for the conversion of mortgaged property, limited, however, to the amount of his mortgage; or, if he should be permitted to recover in excess of his mortgage, that he would have to account to the mortgagor for such excess. Mantonya v. Martin, 69 Ill. App., 62.

The mortgagor must also account upon the mortgage debt for whatever sum he may recover from the person who has cut timber upon the estate, or for whatever he may receive from the sale of the timber itself, when he has taken possession of that. Guthrie v. Kahle, 46 Pa. St., 331.

If the mortgagee purchased mortgaged premises at the foreclosure sale for the full amount then due on the mortgage, he has no claim to logs previously cut upon the premises. Berthold v. Holman, 12 Minn., 335.; Corbin v. Reed, 43 Iowa, 459.

When the mortgagee has been paid his debt his right of action for the trespass is gone, although the trespass upon the property was committed before payment. Kennerly v. Burgess, 38 Mo., 440.

And in most States there must be an allegation in the bill, and proof, before the recovery can be had for timber removed, that the land would not be adequate security for the payment of the mortgage without the timber. Especially is this true when an injunction is sought to restrain the removal of the timber. Van Wyck v. Alliger, 6 Barb., 507; Buckout v. Swift, 27 Cal., 433; Hill v. Gwin, 51 Cal., 47.

Authorities could be multiplied that a mortgagee is entitled to the payment of his debt and to the preservation of the property to the ex-

tent of his lien, and that when so much is accomplished the law has done as much for him as he has any right to demánd.

In the present case, if Starr and wife had brought an action against Carey before a rescission of their contract of sale with the varioụs purchasers and before the maturity of the puchase money notes, if they could have recovered against him at all, of which the writer is in nowise assured, they certainly would have been limited to the balance due upon their debt and ought to have been limited to such balance as might be left unpaid upon their debt after foreclosure and sale of the remainder of the mortgaged property. It certainly is not right that Carey, who was morally innocent in the whole transaction, should be permitted to suffer by reason of any subsequent trasaction between the vendor and vendees. The measure of his liability was fixed by the condition of affairs that existed at the time he purchased the ties and used them. At that time, there was due to Starr and wife upon the whole debt only the sum of $3294, which, if Carey had paid, he would have been entitled not only to the ties that he had purchased, but also to their interest in the land. Subsequently, however, Starr and wife received upon this debt the land which the jury found to have been worth $2758.33, and a balance of $535.67 is left unpaid to Starr and wife upon their indebtedness. If Carey can be held at all, it surely can be for no greater sum than this.

*F. H. Prendergast* and *Ben S. Pope,* for defendants in error.—The title to the land having been reserved by plaintiff in the contract of sale, and the purchasers agreeing not to cut timber, they were trespassers in converting the timber into cross ties, and the defendants having converted the ties, are liable for the value of the ties. Woodenware Co. v. United States, 106 U. S., 432; Jenkins v. McConico, 26 Ala., 213; Ellis v. Wire, 33 Ind., 127; Nesbitt v. Lumber Co., 21 Minn., 491; U. S. v. Williams, 18 Fed. Rep., 475; U. S. v. Baxter, 46 Fed. Rep., 350; Hutchins v. King, 1 Wall., 59; U. S. v. Cook, 19 Wall., 591; King v. Stuart, 84 Fed. Rep., 546; Kolb v. Bankhead, 18 Texas, 232; Focke v. Blum, 82 Texas, 437; Fisher v. Brown, 70 Fed. Rep., 570; Acrea v. Brayton, 38 N. W. Rep., 171; Nelson v. Graff, 12 Fed. Rep., 389.

The trial court erred in rendering judgment for the amount of the damage done to the land by the cutting of the timber from it less the $1097.99 cash paid the plaintiff by the purchasers. This was error, because the amount of damage to the land was not and is not the correct measure of damages, and it was not correct to deduct the amount of the cash payment from the amount of damage done to the land. Estes v. Browning, 11 Texas, 237; Walker v. Emerson, 20 Texas, 707.

The jury having found the damage to the land by cutting the timber to be $1.25 per acre, the trial court erred in not rendering judgment for that amount, and erred in deducting from that amount the cash payment of $1097.99.

Where a person buys land on a credit, and agrees not to cut timber

until the land is paid for, and the vendor reserves a lien to secure the purchase money, but the purchaser buys with no intention of paying for the land and with the intention of cutting timber in violation of the agreement, and does cut timber and convert it into cross ties, in a suit by the vendor of the land against the purchaser of the cross ties, the measure of the damage is the value of the cross ties, not the value of the timber standing in the woods. Ellis v. Wire, 33 Ind., 127; Ewart v. Kerr, 2 McMullan, 141; Jenkins v. McConico, 26 Ala., 213; Wooden Ware Co. v. United States, 106 U. S., 432; Nesbitt v. Lumber Co., 21 Minn., 491; Kolb v. Bankhead, 18 Texas, 232; United States v. Williams, 18 Fed. Rep., 475; United States v. Baxter, 46 Fed. Rep., 350; Norris v. United States, 44 Fed. Rep., 735; Hutchins v. King, 1 Wall., 59; United States v. Cook, 19 Wall., 591; King v. Stuart, 84 Fed. Rep., 546; Nelson v. Graff, 12 Fed. Rep., 389; United States v. Mills, 9 Fed. Rep., 684; Acrea v. Brayton, 38 N. W. Rep., 171; Whiting v. Adams, 25 Law Rep. Ann., 600; Fisher v. Brown, 70 Fed. Rep., 570.

Willful trespassers cut trees on Starr's land and made them into cross ties worth 31 cents each and sold them to Carey, who sold them to the railway. They can not be innocent purchasers of the ties from Starr's vendees, because in the deeds from Starr a lien was expressly reserved which retained the title in Starr. The person who sold the ties to Carey had no title except what was in the deeds from Starr, which provided that they should not cut the timber. The record title was in Starr.

In the companion case of Missouri, Kansas & Texas Railway v. Starr, 55 Southwestern Reporter, 393, it was decided, where willful trespassers cut Starr's timber and made ties and sold them to Carey and the railway, that Starr could recover the value of the ties, 31 cents. (Application for writ of error was refused.)

We have now to see if there is any reason for applying a different measure of damages in this case. (1) The persons who actually cut the ties are in no better condition; here, indeed, they have added hypocrisy to theft. To lull the owner into fancied security, they made a pretended purchase and agreed not to cut timber so they would have a better opportunity to commit the depredations on the land. (2) Carey and the railway are in no better position. Carey advertised for ties, bought all that were brought, and asked no questions as to title. (3) The plaintiffs in error have not relied on any distinction between this case and the other one.

The following cases, cited in our brief, were different from ordinary trespasses. The act of Congress permitted the purchaser to cut timber in order to improve the land; parties cut timber to sell, and the courts held the government could recover the timber in its improved state. United States v. Williams, 18 Fed. Rep., 475; United States v. Cook, 19 Wall., 591.

In Hutchins v. King, 1 Wallace, 59, the mortgagor cut the timber; the same ruling was made. In Nelson v. Graff, 12 Federal Reporter, 389, the purchaser had the right to cut timber from forty additional

acres every time he paid $1200.  He cut more than this, and the owner recovered the full value.

On the general doctrine that we can recover the value of the ties, we cite the following:  Silsberry v. McCoon, 3 Comstock, 381.  Silsberry took corn from Wood and made it into whisky.  Creditors of Wood levied on the whisky and sold it.  Silsberry sued them.  The court say: "If the wrongdoer sells the chattel to an honest purchaser having no notice of the fraud by which it was acquired, the purchaser obtains no title from the trespasser, because the trespasser had none to give.  It would be absurd to say the original owner may retake the thing by an action of replevin in its improved state and yet he may not, if put to his action of trespass, recover the improved value in damages."

The brief of the plaintiff in error in that case is printed at length and is an admirable statement of the law; and it likens the man who improves another's chattel to the man who builds on the land of another.  Under our law regulating improvement in good faith, if a man honestly and innocently improves my land, I must pay for the improvements, but a person can not, in bad faith, improve my land and then sell the improvements to an innocent man and make me pay for them.  Heidenheimer v. Loring, 6 Texas Civ. App., 571.  The case of Silsberry v. McCoon is approved in 2 Sedgwick on Damages, sec. 504; Wells on Replevin, p. 337; 1 Waterman on Trespass, 361; 2 Schouler on Personal Property, sec. 35, 37.  For a full discussion, see Eaton v. Langley, 47 S. W. Rep., 123.  This case gives good reasons why the owner should recover more than the value of the standing timber.  Much confusion results from not keeping in mind the difference between a willful trespasser and one who acts innocently in what he does.

Our opponents are very much shocked at our recovering more than the value of the land and keeping the land, too.  They made no effort to pay for the land and take it; they have made no such offer.  This was a new question in Texas.  They sought first to defeat us entirely on the plea of innocent purchaser, and, failing in that, they present the true measure of damages at 5 cents a tie, the value of the standing timber; failing in that, they now cry out the enormous injustice of allowing such an amount, as though the amount of our recovery would change the law.  The other side makes no distinction between this case and the other case, and we have treated them the same in both cases.  We kept the land and recovered 31 cents per tie in the other case.  In this case, we keep the land, charge them 31 cents per tie, and credit them with the $1097.99, cash paid by the vendees.

BROWN, Associate Justice.—James F. Starr and his wife, Clara C. Starr, owned as their separate property and in separate parcels the Andres Gonzales league of land situated in Wood County, which they caused to be divided into blocks of about sixty acres each.  During the latter part of the year 1896 and the first of 1897, they sold twenty of the blocks to twenty different persons.  Each purchaser paid one-fourth

of the price cash and gave notes for the remainder, due at future dates. Starr and wife made a separate deed to each of the vendees, and in each of the deeds and in the notes given by each vendee for the purchase money, a vendor's lien was expressly reserved, and, in addition, there was inserted in each deed and each note the following stipulation: "That I do agree that until said consideration for said conveyed land is fully paid, I will duly render said land for taxation, except for the present year, and pay the taxes thereon promptly as they become due, and will not remove, nor permit others to do so, any timber, stone, or other material of value now upon said conveyed land, and will not use said material except as may be necessary in improving said land, and for necessary fuel to be used on said conveyed land by the person occupying said conveyed land under said deed." Soon after the sales were made, each of the vendees began to cut the timber and make it into railroad ties and each of them sold, directly or indirectly, the ties to J. W. Carey, who was a tie contractor for the railroad company and sold the ties to the Missouri, Kansas & Texas Railway Company of Texas. In August, 1897, Starr and wife learned that the vendees had cut the timber and sold it, and, by agreement between them and their several vendees, each one of the sales was rescinded and each of the twenty blocks was reconveyed to Starr and wife, according as it had been conveyed by him or her. In consideration of the conveyance, all of the purchase money notes were canceled; but it was expressly stipulated that Starr and wife reserved the right to sue for the value of the timber and of the ties which had been cut from the land and sold.

J. F. Starr and Clara C. Starr filed suit in the District Court of Wood County against J. W. Carey and the Missouri, Kansas & Texas Railway Company of Texas for the value of the ties purchased by Carey from their several vendees that had been taken from the lands in question. The case was tried before a jury which returned a special verdict, finding the following facts:

"1. The timber was worth 5 cents per tie standing in the woods.

"2. First-class ties worth 31 cents per tie on the railroad where delivered, and culls worth 13 cents. Ten per cent were culls.

"3. A. S. Cain, Starr's agent, did not consent for the ties to be cut.

"4. He had no authority to consent to the timber being cut.

"5. The purchasers knew that Starr and wife would object to the timber being cut.

"6. A. S. Cain was plaintiffs' agent to sell the land.

"7. Cain was the agent to prevent timber being cut from said land.

"8. Cain was the agent to see that the timber clause in the deeds was not violated.

"9. Starr and wife did not know that the timber was being cut.

"10. Cain knew that the timber was being cut.

"11. The facts show that the purchasers cut timber in violation of the contract.

"12. Carey purchased some of the ties from persons who made the ties, and partly from other persons.

"13. Defendants purchased the ties without any notice of the timber clause and paid fair value therefor.

"14. Land was worth $3.50 in May, 1897, and worth $2.25 per acre when the suit was filed in October, 1897.

"15. The plaintiff could have learned that ties were being 'cut by the use of ordinary diligence.

"16. The purchaser of the land paid to Starr and wife cash $1097.99; the value of the ties standing in the woods was less than this amount.

"17. The purchasers of the land did not buy with any intention of paying for it.

"18. The purchasers intended when they purchased the land to cut the timber in violation of the contract."

Both parties moved the trial court to enter judgment in their favor upon the findings of the jury, but the court rendered judgment for Mrs. Starr for $289.84 and for Starr for $144.42. The Court of Civil Appeals reversed that judgment and gave judgment in favor of Starr and wife against J. W. Carey and the Missouri, Kansas & Texas Railway Company of Texas for the value of the ties at the time and place they were sold to Carey, less the cash payments made by the vendees of the several tracts of land.

The first question that arises upon this state of facts is, what relation did Starr and wife sustain to the land between the date of the sales made by them and the reconveyance of the land? The plaintiffs in error claim that Starr and wife occupied the relation to the land of mortgagees out of possession and were entitled to damages according to the rules of law applicable to mortagees, while the defendants in error claim that they were the owners of the land and the timber at the time it was cut and sold, and are entitled to recover its value in the condition it was when Carey bought it.

In the case of Stephens v. Motl, 82 Texas, 81, this court held that a vendor who reserved a vendor's lien in his deed could not maintain suit for the land against one claiming adversely to the vendee. The court said: "Notwithstanding the reservation of the vendor's lien in the deed, Motl had the right to the possession of the land under his contract of purchase, and title was vested in him, subject only to be defeated by rescission for failure to pay the purchase money; and it might become perfect on payment of the notes. He was then the proper party to bring suit for the land. Rucker did not have the right of possession. In an action of trespass to try title, the petition must state that the plaintiff was in possession of the land when the right of action accrued or when ousted, or that he was entitled to such possession. Rev. Stats., art. 4786. Although he held the superior title as between himself and his vendee, Rucker stood in the relation of a mortgagee of the land out of possession, and not entitled to possession until default on part of the vendee and a rescission by him of the contract, or a foreclosure." The title that re-

mains in the vendor in such transaction is superior in the sense that the vendee can not assert his title against the vendor, unless he has paid the purchase money.

From the time it was first announced that the reservation of lien in a deed reserved the superior title to the vendor, there has been a continuous and persistent effort to push it to the limit of executory contracts for the sale of land, but this court has steadily resisted that effort and has uniformly limited the vendor's title to the character of security for the purchase money debt, and, when the debt has been paid, the title of the vendor ceases.  Ogburn v. Whitlow, 80 Texas, 241; Brown v. Montgomery, 89 Texas, 250.  In Ogburn v. Whitlow, the vendee sought to defend against the purchase money notes on the ground that there was a defect in the title to the land and claimed that the deed was an executory contract; but this court said: "While such deeds have been held by this court to be executory for some purposes, we think it should not be so held for all purposes, and that the one now in question should, upon the issue now presented, be treated as an executed contract."

When the purchase money has been paid, the title of the vendee in a deed of the character in question becomes absolute as to the vendor without any action on his part.  It is not executory in any sense, except that the title awaits the payment of the purchase money for the land.   Stitzle v. Evans, 74 Texas, 596; Russell & Seisfeld v. Kirkbride, 62 Texas, 455.

Starr and wife had the right to have the purchase money paid out of the land, and, for that purpose, had a lien upon it and upon the timber growing thereon.   To secure the payment of the debts, they could have maintained an action against their vendees, if they unlawfully cut and carried away the timber therefrom, in case the land failed to pay the debts; or they might have enjoined the cutting of the timber by their vendees by showing to the court that it impaired their security.   The debts not being paid, Starr and wife might have maintained an action against any one who trespassed upon the land and appropriated the timber; but would have been required to credit the amount of recovery upon the debt.   In this respect their rights were the same as mortgagees, and their recovery should be governed by the same rules.   The injury to their security is the measure of recovery.   Bank v. Knapp, 22 La. Ann., 117; Jackson v. Turrell, 39 N. J. L., 329; Schalk v. Kingsley, 42 Id., 32; Dudley v. Reynolds, 1 Kan., 285; Lane v. Hitchcock, 14 Johns., 214.

The amount of the debts secured by the vendor's lien constituting the measure of the vendor's rights in the land, when the debts were satisfied by a reconveyance of the property to Starr and wife, their right of action for the removal of timber terminated.   Berthold v. Holman, 12 Minn., 335; Corbin v. Reed, 43 Iowa, 459; Kennerly v. Burgess, 38 Mo., 440; Hutchins v. King, 1 Wall., 53.   The case last cited is in point.   The mortgagor made default in payment.   He had cut timber from the land and sold it and the mortgagee seized the timber in the hands of the purchaser.   The debt was subsequently paid and the person who purchased from the mortgagor demanded the timber of the mortgagee, who

refused to deliver it, claiming, as in this case, that he was owner of the land and the timber; but the Supreme Court of the United States held that the mortgagee's rights in the timber ceased when his debt was paid. The court said: "The mortgagors had, it is true, no right to cut the timber after default made in any of the payments designated in the mortgage. They could do nothing to diminish the value of the estate. The right to cut the timber rested upon the license contained in the stipulations of the mortgage. Their cutting, except in pursuance of such license, might have been restrained, upon proper application, by a court of equity. Brady v. Waldron, 2 Johns. Ch., 148. The sale by them, after it was cut, did not divest the lien of the assignees of the mortgage; the purchasers took the timber subject to their paramount rights. The assignees could follow it and take possession of it, and hold it until the designated amounts due at the time were paid. When these were paid, their rights over it ceased, and the vendee of the mortgagors became invested with a complete title. The subsequent detention of the timber by the assignees was wrongful and the sale of it a conversion, for which they were liable to the purchaser."

The cases of Berthold v. Holman, 12 Minnesota, 335, and Corbin v. Reed, 43 Iowa, 459, cited above, are directly in point, each holding that a purchase of the land by the mortgagee in satisfaction of the debt extinguished his claim for timber cut before foreclosure. The defendants in error could not have acquired from their vendees any right to sue the plaintiffs in error, and their reservation could apply only to the right they had before, if any, against Carey and the railroad company, which was satisfied by their acquisition of the land.

The District Court and the Court of Civil Appeals erred in awarding any sum in favor of Starr and wife against the plaintiffs in error, and it is ordered that the judgment of the Court of Civil Appeals be reversed, except so far as it reverses the judgment of the District Court, and, to that extent, it be affirmed; and this court proceeding to render such judgment as the District Court should have rendered, it is ordered that James F. Starr and Clara C. Starr take nothing by their suit, and that the defendants, J. W. Carey and the Missouri, Kansas & Texas Railway Company of Texas, go hence without day and recover of the said J. F. and C. C. Starr all costs in this behalf expended.

*Reversed and rendered.*