**BOND et al. v. KIRBY LUMBER CO. et al.**

No. 2212.

Court of Civil Appeals of Texas. Beaumont.
March 24, 1932.

Rehearing Denied March 30, 1932.

Todd & Pipkin and C. A. Lord, all of Beaumont, and John B. Warren, of Houston, for plaintiffs in error.

A. M. Huffman, of Beaumont, for defendant in error Peavy-Moore Lumber Co.

J. B. Forse, of Newton, Minton & Minton, of Hemphill, and Andrews, Streetman, Logue & Mobley, of Houston, for other defendants in error.

**WALKER, J.**

The facts of this case present the three following controlling propositions: (a) A judgment as to boundaries is res adjudicata. Bond v. Kirby Lumber Co. (Tex. Civ. App.) 2 S.W.(2d) 936, 937, hereinafter referred to as the first Bond Case. (b) When the Supreme Court of this state has once determined a specific issue, its judgment thereon is binding upon the lower courts in all subsequent litigation where this specific issue is involved even where the issue is raised by different parties and the subject of the litigation is different. Benavides v. Garcia (Tex. Civ. App.) 283 S. W. 611. (c) Having obtained a favorable judgment and decree from the Supreme Court upon specific representations as to a given state of facts, which he could not otherwise have obtained, a litigant cannot, while retaining such benefits, assert in another court the very matter disposed of in the former suit. Smith v. Chipley, 118 Tex. 415, 16 S.W.(2d) 269.

This action as tried in the lower court was a boundary suit to determine the location upon the ground of the west boundary line of T. & N. O. section No. 9, and the dividing line between T. & N. O. section No. 9 on the north and T. & N. O. section No. 12 on the south, located in Jasper county, Tex. The facts of these boundary controversies were before us in the first Bond Case, cited above, which statement we adopt as a part of this opinion. In that case we affirmed the judgment of the lower court, finding that the boundaries of section No. 11 were properly located upon the Williams resurvey of these sections. On the trial of this case judgment was entered in favor of appellees upon a verdict instructed in favor of the Williams lines. Sections Nos. 10 and 11 lie immediately east of sections Nos. 9 and 12, thus giving all four sections a common corner, being the southeast corner of section No. 9. In so far as the issues of this case involve the location of the boundary line between sections Nos. 9 and 12, the parties to this appeal are the very parties to the appeal in the first Bond Case, supra. Appellants claim title to the disputed strip, consisting of about 129 acres under B. W. Johnson, who was a party to the agreed judgment which formed the basis of our opinion in the first Bond Case, supra, and in which he agreed that the Williams lines were the correct boundary lines of sections Nos. 9, 11, and 12. To make this point clear, we copy in full the letter from Mr. Johnson to Judge Cobbs, upon which that agreed judgment was entered:

"Orange, Texas, Feb. 24, 1909.

"Mr. T. D. Cobbs, San Antonio, Texas.

"Dear Sir: Yours of 22d received, and note what you say in regard to you giving up more land, and do not say anything or seem to realize that I am agreeing to give up any in order to bring about a compromise that you Lawyers fail to accomplish. So I beg to call your attention to the fact that I hold a patent on the part of Sec. 9 which I agree to give up, which I believe I am entitled to, and paid cash for. I think the proposition reasonable and right, and it would leave the land in better shape. What I agreed to was a strip across west side Sec. 11, width of conflict, but you wrote judgment and sent to me for a part of said strip.

"I show below by marks on lines what I asked you to do, and after showing Col. Gibb my letter, he recommended doing it and I ask nothing more, but have agreed to do more in agreeing to pay all the cost.

"Please let me hear from you again. Trusting this will meet with your approval, I am,

"Yours truly,

"B. W. Johnson."

There was a trial of this cause on October 2, 1905, wherein appellant H. N. Ratliff recovered the northwest quarter of section No. 9 on his plea of limitation of ten years. On appeal that judgment was reversed and the cause remanded. Texas & New Orleans R. Co. v. Haynes, 44 Tex. Civ. App. 272, 97 S. W. 849. Upon a second trial of that cause on the 21st of February, 1907, appellant H. N. Ratliff re-

On this statement the judgment in the first Bond Case, supra, was res adjudicata of the proper location of the boundary line between sections Nos. 9 and 12. By refusing the writ of error against our opinion in that case, the Supreme Court gave effect to our judgment that the Williams lines are the correct boundary lines of this block of T. & N. O. surveys, thereby fully foreclosing this issue against appellants.

The location of the west boundary line of section No. 9 involves the following facts: The parties to this suit were the appellees, Kirby Lumber Company and Peavy-Moore Lumber Company, as plaintiffs, with W. P. Bond, Miller-Vidor Lumber Company, H. M. Maund, H. N. Ratliff, and Buna State Bank as defendants. This T. & N. O. block of surveys, including survey No. 9, was first surveyed about 1875 by J. C. Harrolson, county surveyor of Jasper county. The official maps of the land office showed a vacancy between sections Nos. 9, 12, and 13 on the east and the Landell sections on the west, bounded on the north by section No. 3. About 1891 Captain E. I. Kelly surveyed 160 acres of this claimed vacancy for appellant H. N. Ratliff. This survey was bounded on the north by T. & N. O. section No. 3, on the east by T. & N. O. sections Nos. 9 and 12, and on the west by Landell sections Nos. 12 and 5. In cause No. 1156, filed in the district court of Jasper county on the 25th of January, 1905, the Texas & New Orleans Railroad Company sued Samuel Haynes, appellant H. N. Ratliff, C. E. Slade, and J. A. Ratliff in trespass to try title to recover the title and possession of section No. 9.

covered, on his plea of limitation, 64.4 acres of land on the west side of the northwest quarter of section No. 9, 382.7 varas wide and 950 varas long. On appeal that judgment was affirmed. Haynes v. Texas & New Orleans R. Co., 51 Tex. Civ. App. 49, 111 S. W. 427, with writ of error denied by the Supreme Court. On the trial of that case the Texas & New Orleans Railroad Company contended for the Williams lines, which included in section No. 9 all of the H. N. Ratliff 160 acres, and the effect of the judgment awarding Ratliff 64.4 acres was to make his claim of 160 acres a part of section No. 9. As we understand the testimony of Mr. Ratliff given on the trial of that case, the basis of his claim was his house and improvements, which were situated on his claim for 160 acres. Mr. Williams, the surveyor, testified in that case showing that the Ratliff survey of 160 acres was on top of and formed a part of T. & N. O. section No. 9, and no issue was raised on the trial of that case against this theory of the proper location of the lines against Mr. Williams' theory of the proper location of the west boundary line. In fact, appellant Ratliff on that trial took the same position, and, as we understand his position, agreed with the contentions of Mr. Williams. On that issue Mr. Ratliff testified:

"Q. There was a mistake made in the lines by Capt. Kellie? A. Yes sir.

"Q. Isn't it a fact that you have disregarded Capt. Kellie's survey and holding on to the old survey? A. Yes, sir, I don't consider his work legal."

Again in 1915 R. W. Wier sued appellant H.

N. Ratliff for this same land, claiming the Williams lines as the proper boundary lines. Ratliff answered that suit and claimed the 160 acres surveyed to him, as above stated, and also claimed the northwest quarter of section No. 9 by limitation. Judgment was entered in that case on the 15th of June, 1915, decreeing the Williams lines as the correct boundary lines of this section, again denying the existence of the Ratliff survey of 160 acres. But in the judgment in that case Ratliff again recovered the 64.4 acres awarded to him in the Haynes suit, with another 15 acres to which he had undisputed title. On December 29, 1923, Ratliff conveyed the timber on all the land in controversy to W. P. Bond, and on the same day Bond conveyed this timber to H. M. Maund. A vendor's lien was retained in these sales, which was afterwards conveyed to Buna State Bank. On the statement made the judgments in the two cases, Texas & New Orleans R. Co. v. Haynes and Wier v. Ratliff, are res adjudicata of the proper location of the west boundary line of T. & N. O. section No. 9. These facts also invoke propositions (b) and (c), as stated above, which fully support the instructed verdict in favor of the Williams lines.

We take from appellees' brief the following summary of the facts showing the general acceptance and recognition by interested parties of the Williams lines, as being the correct boundary lines of this T. & N. O. block of surveys:

"In 1905 Sections 1, 3, 5, 7, 9, 11 and 13 were owned by the T. & N. O. Railroad Company. They had Mr. Williams do this work. He returned the field notes to the General Land Office and the General Land Office approved them. Thereafter, the T. & N. O. conveyed Sections 1, 3, 5 and 7 to B. F. Bonner, Bonner conveyed to R. W. Wier Lumber Company and R. W. Wier Lumber Company to Kirby Lumber Company. Each of these deeds used the Williams field notes. Sections 9 and 11 were conveyed by the T. & N. O. to Mr. R. W. Wier, and by Mr. R. W. Wier to R. W. Wier Lumber Company, and by R. W. Wier Lumber Company to Kirby Lumber Company. Each of these conveyances used the Williams notes. T. & N. O. Section 13 is owned by Peavy-Moore Lumber Company and its conduct in this suit shows that it recognized the Williams notes. Section 2 was patented in three parts. The west half thereof was pattented to B. W. Johnson on the Williams notes. The northeast quarter thereof was patented to J. H. Shepherd on the Williams notes. The southeast quarter thereof was patented to Clarence Shepherd on the Williams notes. The location of Sections 2 and 5 were litigated in the suit by Mixon v. Kirby Lumber Company and the Williams notes were sustained and this court affirmed such judgment. T. & N. O. Section 6 was patented in three parts. The northwest quarter was

patented to A. J. Singleton on the Williams notes. The survey was made by Joe McDonald, a witness for plaintiffs in error. He used the Williams notes. The northeast quarter was surveyed for T. R. A. Williams on the Williams notes. The south half of T. & N. O. Section 6 has not been patented, but the field notes of Mr. Joe McDonald running this out follow the Williams notes. T. & N. O. Section 8 is patented in several parts. The west half was patented to O'Connor on the Williams notes, and was run out by Mr. Joe McDonald on the Williams notes. The east half, except the 80 acres, has not been patented but was surveyed by Mr. McDonald following the Williams notes. The 80 acres is in the center of the survey and it is difficult to say which notes it ties to because it does not call for outside corners of the survey, but it was patented to Mr. Pat O'Connor on the same day that he accepted a patent to the west half based on the Williams notes. T. & N. O. Section 10 is likewise patented in several parts. The northwest quarter thereof was patented to Mr. J. F. Votaw upon Mr. McDonald's work following the Williams notes. The south half was surveyed by McDonald for Votaw using the Williams notes. T. & N. O. Section 12 is patented in three parts. The two north quarters were patented on the Kellie notes. The south one-half, however, was patented to Mr. B. W. Johnson on the Williams notes. Your judgment in the case of Bond v. Kirby Lumber Company, writ of error denied by the Supreme Court, construes the judgment in Johnson vs. T. & N. O. as conforming to the Williams notes. W. P. Bond, Miller-Vidor Lumber Company and Buna State Bank all hold under judgment as shown by the record title set out more in detail above, and necessarily the same construction which you placed on that judgment in the case of Bond v. Kirby Lumber Company should follow here. The north half of Section 14 was patented to Mr. B. W. Johnson on the Williams notes. Thus every survey in the block by the parties or by the courts has been established on the Williams locations."

The trial court submitted to the jury certain issues, inquiring as to the amount of the timber cut by appellee Peavy-Moore Lumber Company from certain land covered by the vendor's lien above referred to, held by Buna State Bank, which land was not decreed to appellees by the judgment of the lower court, and judgment on the verdict of the jury for the value of this timber was entered against appellee Peavy-Moore Lumber Company, who cross-assigns error on this issue. The following is a summary of the bank's pleadings, as taken from appellees' brief:

"Buna State Bank, the sole party having any recovery as to Peavy-Moore Lumber

894

Company, pleads its notes and lien and that Peavy-Moore Lumber Company and Kirby Lumber Company entered upon the land to cut and remove 300,000 feet of the timber therefrom and then the following allegations:

" 'Intervenor alleges that the said timber so converted was of the reasonable market value, as stumpage, of $12.00 per thousand feet log scale; that the said timber so removed from the said land by the said defendants and manufactured into lumber at the defendants' sawmill, and the lumber into which said timber was manufactured at the time of cutting and removal thereof was of the reasonable market value in its manufactured state of $30.00 per thousand feet; that the said lumber so manufactured by the defendants from said timber was mixed and mingled with their own lumber, and sold by them upon the market and so placed by them beyond the reach of this intervenor.' "

In support of its allegations, the bank offered proof only as to the quantity and value of the timber. It also offered its notes in evidence. The pleadings and proof do not support the judgment in the bank's favor. It neither pleaded nor proved that its security had been destroyed by the cutting and removal of the timber in question; also, it failed to plead that enough timber was not left on the land to secure fully the payment of its notes. In Carey v. Starr, 93 Tex. 508, 56 S. W. 324, 326, the holder of the vendor's lien pleaded for recovery, as did the bank in this case. This pleading was held insufficient by the Supreme Court, where, speaking for the court, Judge Brown said: "In this respect their rights were the same as mortgagees, and their recovery should be governed by the same rules. The injury to their security is the measure of recovery. [Citizens'] Bank v. Knapp, 22 La. Ann. 117; Turrell v. Jackson, 39 N. J. Law, 329; Schalk v. Kingsley, 42 N. J. Law, 32; Dudley v. Reynolds, 1 Kan. 285; Lane v. Hitchcock, 14 Johns. [N. Y.] 214."

In Shell Pipeline Corp. v. Guthrie (Tex. Civ. App.) 21 S.W.(2d) 710, citing Schalk v. Kingsley, 42 N. J. Law, 32, discussing the measure of damages in a suit by a mortgagee out of possession for injury to the freehold, it was said: "The action must rest upon proof that, before the alleged injury, the mortgaged premises were of sufficient value to pay the plaintiff's mortgage, or a part of it, and that, by reason of such injury, they become inadequate for that purpose."

From what has been said it follows that the judgment of the lower court on the issues of boundary should be affirmed; but, on the issue of damage to the timber in favor of Buna State Bank, it should be reversed, and the cause remanded for a new trial.