**BUELL REALTY NOTE COLLECTION TRUST, Appellant,**

v.

**CENTRAL OAK INVESTMENT CO. et al., Appellees.**

**No. 17900.**

Court of Civil Appeals of Texas, Dallas.

June 22, 1972.

Rehearing Denied July 13, 1972.

James P. Swift, Dallas, for appellant.

Bill Jones, McKool, Jones, Shoemaker, Turley & Vassallo, Dallas, for appellees.

BATEMAN, Justice,

The question here is whether the owner or mortgagee is entitled to money paid as compensation for land condemned for public use. Appellees were the owners of a tract containing 114,019 square feet, which they had purchased for $735,000, of which $185,000 was paid in cash. Appellant holds a vendor's lien note for the balance of $550,000, due in April, 1974. The City of Dallas condemned 10,793 square feet for which it paid $140,000 into the registry of the county court. The controversy was submitted to the district court, and at the conclusion of a nonjury trial the court awarded the entire amount to appellees. Findings of fact and conclusions of law were filed, as follows:

"1. The market value of the 114,019 square feet of land and improvements, immediately before the taking on July 1, 1971, was $15.00 per square foot, or $1,710,285.00.

2. The market value of the 103,226 square feet of land and improvements, immediately after the taking on July 1, 1971, was $15.00 per square foot or $1,548,390.00.

3. The security interest of the Defendant, Buell Realty Note Collection Trust has not been impaired."

Appellant's first point of error on appeal attacks the judgment as impairing the obligations of its lien contracts, in violation of Article 1, Section 16, of the Texas Constitution, which reads:

"Sec. 16. No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

Appellant cites Travelers' Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007, 1025 (1934), and Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025 (1934), as holding that this prohibition extends also to judicial acts. The court in those cases struck down an act of the legislature known as the Moratorium Law as being in violation of the Constitution, and necessarily held that court judgments which attempted to enforce the unconstitutional statute were beyond the constitutional powers of the judiciary. We have no such situation here. The judgment appealed from was not rendered under any statute attacked as being unconstitutional. This section of the Constitution prohibits the law-making bodies of the state and its political subdivisions from enacting legislation impairing the obligation of contracts. It does not inhibit judicial action except when based on such an invalid statute, and therefore has no application here. Appellant's first point is overruled.

Appellant's second point of error complains of the judgment because it deprives appellant of compensation for its property and property rights, in violation of Section 17 of Article 1 of the Texas Constitution, Vernon's Ann.St., which prohibits the taking of a person's property for public use without adequate compensation being made. The land condemned was taken by the City of Dallas for public use, and no question is raised as to the adequacy of the compensation paid by the city. The trial court's action in deciding that appellant was not entitled to any of the money so paid, even if error, was not a violation of this constitutional provision, and

appellant's second point of error is overruled.

Appellant's third point of error raises the key issue in the case which, as stated, is as to which of the parties under the law is entitled to recover the compensation paid. The prevailing view is that where the entire mortgaged property is taken, the full amount of the condemnation proceeds should be allocated to the mortgagee, to the extent of the mortgage debt. 27 Am. Jur.2d, Eminent Domain, § 257, p. 36. A more difficult question is presented, however, when only a part of the mortgaged property is taken. There is considerable disagreement among the decisions. Different and somewhat inconsistent approaches are made by the courts to announce a rule which will protect the interest of the mortgagee while treating the mortgagor fairly. 29A C.J.S. Eminent Domain §§ 200–202, pp. 890–913.

According to one view, where there is a partial taking the mortgagee is entitled to receive all of the award to the extent of the mortgage debt, the amount received, of course, being credited on the mortgage debt. The leading case utilizing this approach is City of Chicago v. Salinger, 384 Ill. 515, 52 N.E.2d 184, 154 A.L.R. 1104 (1943).

Another approach is that where only part of the land is taken the mortgagee is entitled to receive only so much of the award as will compensate him for the impairment of his security. Seaboard All-Fla. Ry. v. Leavitt, 105 Fla. 600, 141 So. 886 (1932); Swanson v. United States, 156 F.2d 442, 170 A.L.R. 258 (9th Cir. 1946; cert. den. Spokane Portland Cement Co. v. Swanson, 329 U.S. 800, 67 S.Ct. 492, 91 L. Ed. 684 (1947)); Mahoning Nat. Bank v. City of Youngstown, 143 Ohio St. 523, 56 N.E.2d 218, 224 (1944). The trial court followed this impairment-of-security theory and, concluding that appellant's security interest had not been impaired, allocated the entire amount to appellees. We affirm.

Neither of these methods of apportioning the award is entirely satisfactory. The one deprives the owner of the benefit of his bargain in that, contrary to his contract, the maturity of at least a part of his indebtedness is accelerated, even though he is not in default. The other deprives the mortgagee of the benefit of his bargain in that his contract is for a lien on the entire tract and if he is not given the compensation paid for the part condemned he has lost a valuable right affecting the marketability of the mortgage debt unless he discounts it substantially, and forces him to take an uncompensated risk of a catastrophic depression of land values by the time his note matures.

"In any event, the greatly prevailing view is that where mortgaged land is taken or damaged for a public use, the mortgagee is entitled either to the entire award or to so much thereof as is necessary to compensate him for his interest or damage. Accordingly, where the whole of the mortgaged land is taken in eminent domain proceedings, the mortgagee is entitled to all of the award or so much of it as is necessary to satisfy mortgage indebtedness. Where only a part of mortgaged property is taken, the mortgagee is entitled, generally speaking to only so much of the award as is necessary to compensate him for his interest in the part taken, although the view has been expressed that the mortgagee is also entitled to so much of the damages as might be necessary to satisfy his claim on the part of the mortgaged property not taken if it should prove insufficient for that purpose." 27 Am.Jur.2d, Eminent Domain, § 257, p. 36.

We know of no Texas case passing on the precise question. However, there are a number of cases which, almost without exception, embrace the impairment-of-security measure in assessing damage to the security interest caused by the tortious acts of third persons who are strangers to the contract.

One of these is Aggs v. Shackelford County, 85 Tex. 145, 19 S.W. 1085 (1892). Aggs, the mortgagee, was not named as a party to the condemnation proceedings and, after the county had paid to the owner the full amount awarded for the taking of a strip wide enough for a road across his land, sued the county for damages to his security. It was held that his damages were measured by the impairment, if any, of the value of his security; that as he was not a party to the condemnation it was not binding on him and as to him was a nullity; that he still had his lien on the entire tract; that the land had not been damaged by the building of the roadway over it; and that since his security had not been impaired he was not entitled to damages. Other Texas cases recognizing this impairment-of-security doctrine are listed in the footnote.*

Appellant argues that these are all tort cases in which a different rule prevails as to measure of damages. However, we are persuaded that the principle involved is the same. In both the tort case and the eminent domain case the goal is to ascertain the amount of compensation, if any, due the mortgagee. If he fails in his tort action because he cannot show that his security has been impaired, on principle he has no right to complain of the payment of the condemnation award to the owner when the evidence shows to the satisfaction of the court that his security will not thereby be materially impaired.

In Rayburn, Texas Law of Condemnation (1960), Sections 79 and 113, the measure of the mortgagee's damages is stated to be the difference, if any, between the amount owing on the debt and the actual value of the security at the time of taking.

With all due respect to the distinguished author of that treatise, we do not agree that in a case where the mortgagee has bargained for a lien on property valued greatly in excess of the debt, his security may be whittled down in value by partial takings in condemnation, or by tortious conduct of others, to the point where it barely equals the amount of the debt, and there still be no impairment of his security.

■ Each case must be considered in the light of its own facts and surrounding circumstances. Whether the security has been or will be impaired or damaged is a fact issue to be resolved in each case by the triers of the facts, taking into consideration all the surrounding circumstances including, but not necessarily limited to, the fact question of whether after the taking or damage the value of the remaining property has (and probably will continue to have until the maturity of the secured debt) substantially the same ratio to the debt as the value of the mortgaged property bore to the debt at the time of its creation, or at least a value sufficiently in excess of the debt to give reasonable assurance that the debt will be paid at or before maturity. This places a rather heavy burden on the trial court, but it is in our opinion necessary to the balancing of the equities between parties who have, through no fault of their own, suffered an involuntary, substantial change in their property rights. We do not think the trial court in carrying that burden should be restricted or inhibited by an unyielding rule that in all cases of partial taking the compensation should go either to the mortgagee or the owner.

■ In this case the trial court found that appellant's security interest has not

---

* American Nat. Ins. Co. v. City of Port Arthur, 62 S.W.2d 256 (Tex.Civ.App., Beaumont 1933, no writ); Carey v. Starr, 93 Tex. 508, 56 S.W. 324 (1900); Shell Pipeline Corp. v. Guthrie, 21 S.W. 2d 710 (Tex.Civ.App., Eastland 1929, no writ); Carroll v. Edmondson, 41 S.W. 2d 64 (Tex.Comm'n App. 1931, jdgmt adopted); Bond v. Kirby Lumber Co., 47 S.W.2d 891, 894 (Tex.Civ.App., Beaumont 1932, writ dism'd); Panhandle & S. F. Ry. Co. v. Wiggins, 161 S.W.2d 501, 504 (Tex.Civ.App., Amarillo 1942, writ ref'd w. o. m.); Chavez v. Schairer, 199 S.W. 892 (Tex.Civ.App., El Paso 1918, no writ). Cf. Acree v. State, 47 S.W.2d 907, 909 (Tex.Civ.App., Waco 1932, writ dism'd).

been impaired, and appellant does not question the sufficiency of the evidence to support that finding. Under these circumstances and the entire record before us, we cannot say that the judgment is erroneous.

Appellant also argues that until the vendor's lien note is paid its title as vendor is superior in the sense that appellees cannot assert their title against the vendor unless and until the purchase money has been paid, and that this in effect is what they are doing in contesting appellant's claim to the award, citing Collins v. Republic Nat. Bank of Dallas, 152 Tex. 392, 258 S.W.2d 305 (1953), and State v. Forest Lawn Lot Owners Ass'n, 152 Tex. 41, 254 S.W.2d 87 (1953). We do not agree with appellant. It is not necessary to deny the superior title of the holder of the vendor's lien also to recognize that, as held in Stephens v. Motl, 82 Tex. 81, 18 S.W. 99, quoted in Carey v. Starr, 93 Tex. 50, 56 S.W. 324, 325 (1900), he is "in the relation of mortgagee of the land out of possession, and not entitled to possession until default on part of the vendee, and a rescission by him of the contract, or a foreclosure."

In determining the relative rights of the parties to the fund in question we must treat the deed conveying the land to appellees as an executed contract, and not executory, despite appellant's vendor's lien and concomitant "superior title." Appellees were given the exclusive right to use, enjoy and occupy the land and, in short, to have the benefit of all the elements of ownership, subject only to appellant's rights to rescind or to foreclose upon default of payment of the purchase money note. See Carey v. Starr, supra, and also Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 300 (1923); Daugherty v. Manning, 221 S.W. 983, 987 (Tex.Civ.App., San Antonio 1920, writ dism'd); Rooney v. Porch, 239 S.W. 910 (Tex.Comm'n App.1922, holding app'd).

Affirmed.