**CITY OF HOUSTON et al., Appellants,**

**v.**

**Jose L. REYES et al., Appellees.**

**No. 16509.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

July 31, 1975.

Rehearing Denied Sept. 11, 1975.

Jonathan Day, City Atty., Alan F. Levin, Senior Asst. City Atty., Dennis C. Gardner, Asst. City Atty., Houston, for appellants.

Dixie, Wolf & Hall, George C. Dixie, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a judgment enjoining the City of Houston and others from implementing Section 2 of City Council Ordinance No. 74–1531, an ordinance dealing with the organization of the Houston Fire Department.

The plaintiffs have the classification of Pipeman and Ladderman in Grade III, and on behalf of themselves and others similarly situated seek to require the Civil Service Director to hold examinations to establish eligibility lists to fill claimed vacancies in the Grade IV Chauffeur classification. It is their contention that the ordinance created new positions in the Grade IV Chauffeur classification. They further contend that Section 2 of the ordinance transferring Emergency Medical Technician positions to the Chauffeur classification is inconsistent with the general law and is therefore invalid. It is their position that various provisions of Article 1269m, Vernon's Annotated Civil Statutes, prohibit a lateral transfer of persons holding a position in one Civil Service classification to positions in another classification even though both classifications are in the same Civil Service grade. The City contends that the effect of the ordinance was merely to change the name of the Emergency Medical Technician classification, and that the change of duties for some of those holding the Emergency Medical Technician positions occurred later by administrative action, which is within the power of the Fire Chief.

The trial court found that Section 2 was invalid and that vacancies existed in the Chauffeur classification. The judgment ordered the City to proceed to fill the vacancies in accordance with the Civil Service Act.

Ordinance No. 74–1531 was enacted in response to internal dissension in the Houston Fire Department which culminated in a "sick-out". The dissension resulted from the action of the City Council in assigning to the Fire Department the responsibility and duty of emergency ambulance operation. This action was implemented by the adoption of Ordinance No. 71–2292, which established a classification of Emergency Medical Technician in Grade IV of the Fire Suppression Division of the Fire Department. On the passage of this ordinance the hierarchy of the Fire Suppression Division was as follows:

| No. of Positions Authorized | Minimum Positions Required by Ord. 5198 | Classification | First Year | Second Year | Third Year & Over | Minimum Monthly Base Pay Required by Ord. 5198 |
|---|---|---|---|---|---|---|
| 250 | 50 | GRADE II Pipeman and Ladderman (Probationary) | $300 | (Six-month Period) | | $230 |
| 1200 | 325 | GRADE III Pipeman and Ladderman | 311 | 323 | 358 | 250 |
| | | | | FIRST YEAR AND OVER | | |
| 500 | 120 | GRADE IV Chauffeur | 380 | | | 260 |
| 160 | 00 | Emergency Medical Technician | 380 | | | 260 |
| 270 | 65 | GRADE V Junior Captain | 415 | | | 275 |
| 6 | 0 | Graphic Arts Technician | 415 | | | |
| 110 | 22 | GRADE VI Senior Captain | 478 | | | 290 |
| 2 | 1 | Secretary to Fire Chief | 478 | | | 290 |
| 1 | 1 | Senior Accountant | 478 | | | 290 |
| 70 | 20 | GRADE VII District Chief | 554 | | | 315 |
| 1 | 1 | District Chief | | | | |

| No. of Positions Authorized | Minimum Positions Required by Ord. 5198 | Classification | First Year | Second Year | Third Year & Over | Minimum Monthly Base Pay Required by Ord. 5198 |
|---|---|---|---|---|---|---|
| | | (Training Officer) | 554 | | | 315 |
| 1 | 1 | Administrative Officer and Statistician | 554 | | | 315 |
| | | GRADE VIII | | | | |
| 9 | 2 | Deputy Chief | 692 | | | 370 |
| | | GRADE IX | | | | |
| 3 | 1 | Assistant Fire Chief | 830 | | | 440 |
| | | GRADE X | | | | |
| 1 | 1 | Fire Chief | (Nonclassified) $400–1158 | Range Range $550–700 | | |

Ordinance No. 74–1451 created 72 positions in Grade V entitled Paramedic. Certain other changes in the organizational chart resulted from the passage of Ordinance No. 74–1531: The new chart showed 612 positions in Classification Grade IV Chauffeur and 308 positions authorized in Classification Grade V Junior Captain. The title Emergency Medical Technician in Grade IV was dropped as was the title Paramedic in Grade V.

Ordinance No. 74–1531 reads:

"An ordinance creating and re-creating positions, classes, classifications and base pay payable to the holders of such positions in the Fire Department of the City of Houston; specifically abolishing all positions, classes, classifications and salaries or salary ranges in conflict herewith heretofore existing in such department; making other findings and provisions related to the subject; containing a repealing clause; and declaring an emergency.

"BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF HOUSTON:

"Section 1. That all ordinances or parts of ordinances creating, changing, or increasing positions, classifications and salaries or salary ranges in the Fire Department of the City of Houston be, and the same are hereby, merged and consolidated in this ordinance so that all positions, classes, classifications and salaries or salary ranges in conflict herewith or not included herein, are hereby expressly abolished and the following positions, classes, classifications and base pay categories are hereby created in said department, so that hereafter the following, and none other, shall exist therein:

(Then follows the organizational chart of the entire fire department setting out all positions in that department.)

"Section 2. That the City Council hereby provides, with respect to the 156 additional Chauffeur positions herein above designated, that such designation is intended to operate merely as a change in title in the Grade IV classification of the 156 positions of 'Emergency Medical Technician' heretofore existing, and shall

not affect the status, classification, salary or tenure of the persons holding such positions, and persons heretofore holding the classification 'Emergency Medical Technician', Grade IV, Fire Suppression Class, shall hereafter be classified as 'Chauffeur', Grade IV, Fire Suppression Class.

"Section 3. That the City Council hereby provides, with respect to the 72 additional Junior Captain positions herein above designated, that such designation is intended to operate merely as a change in title in the Grade V classification of the 72 positions of 'Paramedic' heretofore existing, and shall not affect the status, classification, salary or tenure of the persons who may in the future hold such positions."

NOTE: Subsequent paragraphs of this ordinance are omitted for brevity's sake.

Ordinance No. 74–1531 was enacted on September 3, 1974. On that same day the council adopted a motion approving the recommendation of a study committee which had been previously appointed to study the problems of the fire department. The report, which was presented as a permanent solution to the EMT–Paramedic problem, included the following recommendations: (1) that cadets be given 80 hours of emergency medical technician training; (2) that Emergency Medical Technician will no longer be a separate classification but will be brought into the main stream of the Suppression class and classified as Chauffeur; (3) that the promotional examination for the position of Chauffeur will henceforth be a test consisting of 60% Suppression questions and 40% medical questions involving EMT training and procedures; (4) that all Grade IV personnel will be required to take an officer's training course to be given at the training academy; (5) the ordinance which established the Paramedic positions will be amended to delete the word "Paramedic" and substitute therefor the words "Junior Captain"; (6) the test for the Junior Captain positions will be composed of 60% Suppression questions and 40% medical questions involving Paramedic training and procedures; (7) all Pipe and Laddermen who take the Chauffeur promotional examination will be required to earn an EMT certificate from the City of Houston Health Department prior to being certified as Chauffeurs assigned to the rescue squad; (8) all Chauffeur positions becoming vacant as the result of promotions to fill the 72 Junior Captain positions will be abolished, and if the effect of such abolition is to leave the Suppression fire fighting forces shorthanded in the Chauffeur classification, Chauffeurs presently serving in the ambulance division will be transferred to fire fighting duties.

Prior to the passage of Ordinance 74–1531, the primary job duties of an Emergency Medical Technician consisted of maintaining and operating emergency ambulances operated by the City of Houston Fire Department and applying first aid and other medical measures to persons using such ambulances. The study materials approved by the Civil Service Commission of the City of Houston used by applicants taking the Emergency Medical Technician promotional examination consisted of medically-oriented materials relating to the job duties of the Emergency Medical Technician position, and the competitive Civil Service promotional examination given to establish a list of eligibles for the position of Emergency Medical Technician was prepared to test the knowledge of the applicants of the job duties of Emergency Medical Technician.

At that time the job duties of a Chauffeur consisted of maintaining the fire suppression apparatus to which they were assigned, driving the fire suppression apparatus to and from the site of fires, and operating the fire suppression apparatus at the site of fires. The study materials approved by the Civil Service Commission for use by applicants taking the Chauffeur promotional examination consisted of material relating to the job duties of the Chauffeur position, and the competitive Civil Service

promotional examination given to establish a list of eligibles for the position of Chauffeur was prepared to test the knowledge of the applicants of the job duties of the Chauffeur's position.

Under the system in existence prior to the passage of the questioned ordinance it would have been possible for one trained as a Pipeman and Ladderman to progress to Grade IV Emergency Medical Technician and thereafter to Grade V Paramedic and thereafter to Grade VI Senior Captain. Thus it would have been possible for a man with no training in fire suppression duties beyond that of a Pipeman and Ladderman, and who had received no experience and little training in fire suppression duties for the preceding four or more years to be in command of a fire station. This was one of the weaknesses in the system which Ordinance No. 74–1531 was designed to eliminate.

There is evidence that after the enactment of Ordinance 74–1531 the 156 persons holding positions previously in the Emergency Medical Technician classification continued to perform the same duties until the 72 medically-oriented Junior Captain positions were filled. One Junior Captain was then assigned to each ambulance displacing a person qualified as a Medical Technician, who was then assigned to fire fighting duties. Those in the Chauffeur classification performing fire fighting duties could not be assigned ambulance duty until they satisfactorily completed training as a Medical Technician.

 Under Article XI, Section 5, of the Texas Constitution, a home rule city cannot enact ordinances that are contrary to the applicable general state law, and any such ordinances so enacted would be void. However, the governing body of a home rule city is not required to look to the Texas legislature for a grant of power to act; such power is granted by the Constitution. *State v. City of La Porte,* 386 S.W.2d 782 (Tex.1965). Under its home rule charter the City of Houston has the power to make

lateral transfers of employees from one classification to another within Grade IV, Civil Service Class D of the Fire Suppression class, unless such action is prohibited by Article 1269m.

 A general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. Both will be enforced if that be possible under any reasonable construction, just as one general statute will not be held repugnant to another unless that is the only reasonable construction. It is the duty of the court to reconcile the ordinance with the general law if a fair and reasonable construction of the seemingly conflicting enactments will leave both in concurrent operation. *City of Beaumont v. Fall,* 116 Tex. 314, 291 S.W. 202 (Comm'n of App. Sec. B, 1927); *Cole v. State [Ex Rel. Cobolini],* 106 Tex. 472, 170 S.W. 1036; *Wagstaff v. City of Groves,* 419 S.W.2d 441 (Tex.Civ.App.—Beaumont, 1967, writ ref'd n. r. e.).

Section 8 of Article 1269m provides:

"The Commission shall provide for the classification of all firemen and policemen. Such classification shall be provided by ordinance of the city council, or the legislative body. Said City Council, or legislative body, shall prescribe by ordinance the number of positions of each classification.

"No classification now in existence, or that may be hereafter created in such cities, shall ever be filled except by examination held in accordance with the provisions of this law. . . . All vacancies shall be filled by permanent appointment from eligibility lists furnished by the Commission within ninety days after such vacancy occurs . . ."

Section 9 of said statute provides:

"The Commission shall make provisions for open, competitive and free examinations for persons making proper application and meeting the requirements as herein prescribed. All eligibility lists for

applicants for original positions in the Fire and Police Departments shall be created only as a result of such examinations, and no appointments shall ever be made for any position in such Departments except as a result of such examination, which shall be based on the applicant's knowledge of and qualifications for fire fighting . . ."

Section 14 provides:

"The Commission shall make rules and regulations governing promotions and shall hold promotional examinations to provide eligibility lists for each classification in the Police and Fire Departments, which examinations shall be held substantially under the following requirements: . . ."

■ It is abundantly clear, therefore that vacancies in existing classifications and all positions in new classifications must be filled from eligibility lists created as a result of examinations given qualified personnel.

Under the heading "Promotions; Filling Vacancies", Section 14 of Article 1269m provides in paragraph F:

"The Commission shall proceed to hold examinations to create eligibility lists within ninety days after a vacancy in any classification occurs, or new positions are created, unless an eligibility list is in existence."

Then follows paragraph G reading:

"In the event any new classification is established either by name or by increase of salary, the same shall be filled by competitive examination in accordance with this law."

The evidence does not establish that a new classification was established by the questioned ordinance either by name or by increase of salary. The question, therefore, is whether or not new positions were created in an existing classification. Section 2 of the ordinance speaks of the "156 additional Chauffeur positions hereinabove designated" and provides that such designation is intended merely as a change in title of the existing 156 positions entitled Emergency Medical Technicians. While Section 1 provides that all positions in classifications in conflict with the organizational chart thereafter set out were expressly abolished and the classification Emergency Medical Technician no longer appeared on the chart, the language of Section 2 makes clear the meaning to be given the language in Section 1. The classification "Emergency Medical Technician" was abolished, but the positions formerly existing in that classification were not abolished but were transferred into the classification "Chauffeur". There were no new classifications or positions created. The evidence establishes that the primary purpose of the ordinance was to require those qualifying for promotion to a position in the classification "Chauffeur" to be qualified to perform the duties either of Emergency Medical Technician or of Chauffeur as they existed prior to the ordinance. This requirement was designed to equalize the opportunities for promotion.

There is evidence that all of the men in the Emergency Medical Technician classification had served as Pipemen and Laddermen for at least one year and that 80% of the men had served more than two years prior to their promotion to Emergency Medical Technician. Since the men in the Emergency Medical Technician classification rarely participated in the in-service training given to those holding positions in the Chauffeur classification, it is probable that one holding a position formerly classified as Emergency Medical Technician would need training before assuming fire suppression duties. However, the long run effect of the ordinance would be to better prepare the men in the Fire Suppression division to perform both fire suppression and emergency medical procedures.

■ The effect of the ordinance was to merge the two formerly separate classifications. The transfer of a position from one classification to another within the same

grade level constitutes neither a promotion, demotion, nor a suspension of that person occupying such position. No new classification was created, but positions in one classification were transferred to another classification within the same grade level. Such a transfer did not create a new position. The transfer of a position from one classification to a different classification is not expressly prohibited or authorized by Article 1269m. Persons occupying positions in each of the classifications affected obtained those positions by proper promotional examinations.

The trial court, therefore, erred in finding that Section 2 of the ordinance in question was invalid as being in conflict with Article 1269m, V.A.C.S.

Appellants also contend that the trial court erred in concluding that it had jurisdiction to hear the case. Contrary to appellants' assertions, Article III, Section 56, of the Texas Constitution, which restricts the legislature from regulating affairs of cities has no bearing on the district court's jurisdiction to hear this case. It is clear that in Texas, the validity of an ordinance is a question of law for the court. *Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945 (1949). Neither do we agree with appellants' assertion that appellees failed to exhaust the administrative remedies provided by Sections 5a and 8 of Article 1269m, V.A.C.S. *Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158 (1961).

The other points of error presented by appellants need not be considered in view of the decision we have made that Ordinance No. 74–1531 is a valid ordinance.

The judgment of the trial court is reversed and judgment is here rendered that Jose L. Reyes, Harry Dean LeMaster and the class which they represent take nothing.