**CITY OF SAN ANTONIO, Appellant,**

v.

**Thomas M. BULLOCK,
et al., Appellees.**

No. 04–99–00906–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 22, 2000.

David W. Strickler, Ruben D. Campos, Wickliff & Hall, P.C., San Antonio, for Appellant.

B. Craig Deats, Deats & Levy, P.C., Austin, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

A group of San Antonio Firefighters brought suit against the City of San Antonio, alleging the City failed to fill vacant positions in violation of the Civil Service Act. The Firefighters moved for summary judgment, and the trial court granted their motion. The City appeals in seven issues. We disagree with its assertions, however, and affirm the trial court's judgment.

### Factual and Procedural Background

On June 24, 1997, the City took personnel action which it characterized as a reclassification of four captain positions to four district fire chief positions. The City claimed that the reclassification's effect was to decrease the number of captain positions by four and increase the number of district fire chief positions by four.

Thomas Bullock, along with several other San Antonio Firefighters (collectively referred to as "the Firefighters,") viewed the reclassification's effect quite differently than the City. Specifically, the Firefighters believed that the reclassification created four vacancies in the district fire chief s' positions. Four captains were then promoted into those vacancies, leaving four vacancies in the captains' rank. No one, however, was promoted to fill the vacancies in the captains' positions.

The Firefighters brought suit seeking declaratory, injunctive, and equitable relief, along with back pay and benefits. In their petition, the Firefighters claimed that the City's failure to fill the alleged vacancies violated its obligation to do so and their rights under the Civil Service Act. Tex. Loc. Gov't Code Ann. §§ 143.028–.037 (Vernon 1999). Specifically, this reclassification of the captains' positions, according to the Firefighters, effectively abolished those positions in violation of the Civil Service Act. And, where a classified position is not abolished by ordinance, the position is vacant and must be filled. *See Duckett v. City of Houston,* 495 S.W.2d 883, 886 (Tex.1973); *International Ass'n of Firefighters, Local 624 v. City of San Antonio,* 822 S.W.2d 122, 131 (Tex.App.—San Antonio 1991, writ denied). The Firefighters argued that those firefighters on the eligibility lists at the time the vacancies arose were entitled to promotion into the vacancies. The vacancies were never filled, and the eligibility lists expired. The Firefighters, therefore, claimed they lost their positions on the lists, and, potentially, the opportunity to be promoted.

The Firefighters moved for summary judgment, and the trial court granted the motion in its entirety. The City appeals the summary judgment in seven issues.

### Standard of Review

■ The underlying purpose of Texas' summary judgment rule is to eliminate unmeritorious claims. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989). To this end, Texas Rule of Civil Procedure 166a(c) provides that where there is no genuine issue

as to any material fact, the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c).[1] In a summary judgment proceeding, the burden is on the moving party. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex. 1982). When the plaintiff moves for summary judgment, he or she must show that he or she is entitled to prevail on each element of the cause of action, except for damages. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Ortiz v. State Farm Mut. Auto. Ins. Co.,* 955 S.W.2d 353, 355 (Tex.App.—San Antonio 1997, pet. denied). Once the movant establishes its right to summary judgment, the burden then shifts to the nonmovant to present issues that preclude summary judgment. *Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 430 (Tex.App.—San Antonio 1993, writ denied).

This court reviews a summary judgment de novo. *Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.,* 945 S.W.2d 160, 162 (Tex.App.—San Antonio 1997, writ denied). In deciding whether a fact issue was raised to preclude summary judgment, this court takes evidence favorable to the nonmovant as true. We also indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

### The Civil Service Act

■ The City is a municipality governed by the Firefighter and Police Civil Service Act, chapter 143 of the Local Government Code. Tex. Loc. Gov't Code Ann. §§ 143.001–.002 (Vernon 1999). All promotions and reclassifications must, therefore, comply with the Act's provisions. The Civil Service Act provides that the City's governing body shall, by ordinance, establish firefighter classifications, as well as the number of positions in each class. Tex. Loc. Gov't Code Ann. § 143.021(a) (Vernon 1999).

The Civil Service Act, in addition to granting the San Antonio City Council the power to regulate the classifications and numbers of firefighters in each class, prescribes the procedure for promoting firefighters from one class to another. *Generally* Tex. Loc. Gov't Code §§ 143.028–.037 (Vernon 1999). This procedure uses scores from a competitive written examination, as well as seniority points, to create an eligibility list for any possible promotions. *Id.* §§ 143.032(c), 143.033(b). An eligibility list is valid for one year from the date the written examination is administered. *Id.* § 143.036(h). If a vacancy occurs, and such an eligibility list exists, the names of the persons having the top three grades on the list are certified to the department for consideration. *Id.* § 143.036(b).

The Civil Service Act allows for collective bargaining between the City and a Union. Tex. Local Gov't Code Ann. § 174.006(a) (Vernon 1999); *City of San Antonio v. Scott,* 16 S.W.3d 372, 376 (Tex. App.—San Antonio 1999, pet. denied). A collective bargaining agreement may vary any provision in the Act. Tex. Local Gov't Code Ann. § 174.006(a) (Vernon 1999); *Scott,* 16 S.W.3d at 376. Any variance, however, must be specifically provided for in the collective bargaining agreement. Tex. Local Gov't Code Ann. § 174.006(a) (Vernon 1999); *Scott,* 16 S.W.3d at 376.

### Collecting Bargaining Agreement

■ The City argues that the collective bargaining agreement between the City and the International Association of Firefighters Local 624 (the Union) supersedes

---

1. In its brief, the City states it is unsure of the standard of review to apply in this case. Specifically, in its first issue, it requests the court to assess the nature of the firefighters' motion for summary judgment to determine whether it is a traditional or a no-evidence motion for summary judgment. The firefighters respond that their motion was a traditional summary judgment motion. We will review the case under the traditional summary judgment standard. *See* TEX. R. CIV. P. 166a(c).

the Civil Service Act. Tex. Loc. Gov't Code Ann. § 143.001 et seq. (Vernon 1999).[2] Specifically, the City claims that the management rights clause contained in the collective bargaining agreement includes "an extremely broad reservation of power" and reserves the power to reclassify firefighter positions to the City in the manner in which it was done here. The clause reads, in part:

### Management rights

**Section 1.** The Union recognizes the management of the City of San Antonio and the direction of the Fire Department are vested exclusively in the City, subject to the terms of this Agreement, and nothing in this Agreement is intended to circumscribe or modify the existing rights of the City. These rights include:

B. Hire, promote, demote, transfer, assign, and retain employees in positions within the City, subject to Civil Service regulations and/or terms of this Agreement ...

D. Maintain the efficiency of governmental operations ...

H. Determine the methods, processes, means, and personnel by which operations are to be carried out.

According to the City, by giving effect to all the provisions in the collective bargaining agreement, it is readily apparent that the City reserved to itself the power to reclassify the captain positions without creating any vacancies. And, because the method of reclassifications at issue here is not mentioned in the Civil Service Act it is not subject to any statutory provisions.

This court faced an issue similar to that presented in this case in *City of San Antonio v. Scott,* 16 S.W.3d 372 (Tex.App.—San Antonio 1999, pet. denied). In that case, Scott was ranked twenty-first on the captains' eligibility list. *Id.* at 373. Before that list expired in February, 1995, twenty vacancies occurred in the captain positions, leaving Scott first on the eligibility list. *Id.*

In July, 1994, an assistant fire chief retired. *Id.* The vacancy created by the chief's retirement could be filled only by a deputy chief or a captain. *Id.* The vacancy was filled in May, 1995, after Scott's eligibility list expired. *Id.*

Scott sued the City, alleging that it violated the Civil Service Act, which requires that vacancies in the assistant fire chief position be filled within ninety days of their creation. *Id.* Scott claimed that if the ninety-day requirement had been met, the appointment to the assistant fire chief vacancy would have been made on October 27, 1994, and a vacancy in a captain's position would have been created that he would have received. *Id.*

Scott moved for summary judgment, claiming that the Civil Service Act controls over the terms of the collective bargaining agreement. *Id.* The trial court granted his motion. *Id.* However, this court reversed and remanded the case, finding that Scott had failed to prove that the San Antonio City Council approved the statutory appointment procedure that included the ninety-day requirement by ordinance. *Id.* Scott prevailed on remand, and the City appealed. *Id.* at 374.

The City, on appeal, noted that the appointment procedure contained in the collective bargaining agreement was different from the Civil Service Act's appointment procedure and in no way mentioned the ninety-day requirement. *Id.* at 375. The City argued that, because the appointment procedure contained in the agreement was inconsistent with the statutory provisions, the City's approval of the agreement was not an approval of the statutory procedure; therefore the ninety-day requirement was not applicable. *Id.*

Scott, however, argued that because the ninety-day requirement was not inconsistent with any provision in the collective

---

**2.** To provide a more logical explanation of our disposition in this case, we address the City's issues in an order different than that presented in its brief.

bargain agreement, it was applicable. *Id.* This court agreed. *Id.* at 376. We held that "[t]he collective bargaining agreement as to when to appoint [was] silent; therefore the Civil Service Act's ninety day requirement prevails because the collective bargaining agreement did not specifically provide otherwise." *Id.* (citing Tex. Local Gov't Code Ann. § 174.006(a) (Vernon 1999)). Essentially, then, the collective bargaining agreement controls to the extent that it specifically conflicts with the Civil Service Act.

The City's argument that the collective bargaining agreement supersedes the Civil Service Act in this case is flawed. First, the collective bargaining agreement here does not conflict with the Civil Service Act. To conflict with the Act, the agreement here would have had to expressly provide for reclassification. Without the simultaneous creation of a vacancy, it does not. And, the City's argument that the broad reservation of power supersedes the Civil Service Act is inconsistent with the Act's specificity requirement. The broad reservation of power in the management clause would, under the City's argument, render the Civil Service Act virtually meaningless.

The City also claims that because a reclassification is not contemplated by the Civil Service Act, any reclassification would not be subject to statutory protection. This assertion, however, is unreasonable in light of the Civil Service Act's stated purpose: "to secure efficient fire ... departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." Tex. Loc. Gov't Code Ann. § 143.001(a) (Vernon 1999). If a city were permitted to reclassify positions without acting inside the boundaries set by the Civil Service Act, then every personnel decision could be made under the guise of a reclassification, allowing the city to circumvent the Act's hiring and promotion procedures. We, accordingly, overrule the City's issue.

## Reclassification: Does it Create a Vacancy?

■ Alternatively, the City argues that if the collective bargaining agreement does not supersede the Civil Service Act in this situation, the City did not violate the Act because a "reclassification" does not necessarily result in the "creation" or "abolishment" of a position. The City points out that the Legislature addressed only two types of personnel actions that can be taken in the civil service context: creation and abolishment of a position. The City argues that even though the Civil Service Act mentions only two personnel acts, a reclassification may still be effected without creating a vacancy. And, it claims that interpreting position reclassifications in this case so as to create new positions under the Civil Service Act would produce absurd results by creating "twelve superfluous ranked positions."

## The Civil Service Act:

■ The City's contention that the Civil Service Act contemplates only creation and abolishment of positions is incorrect. Section 143.021 contains language that is broad enough to encompass a reclassification. Whether section 143.021(c)'s language contemplates a "reclassification" is a question of statutory interpretation. A fundamental rule of statutory construction is that a court should first ascertain the Legislature's intent in enacting the statute as expressed in its plain language. *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 734 (Tex.App.—San Antonio 1999, no pet. h)(citing *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997)). However, where an application of a statute's plain language leads to absurd results, courts do not enforce the statute under a literal interpretation. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 428 n. 1 (Tex. 1998).

Section 143.021 addresses a reclassification in mandating that new positions must be filled from an eligibility list. Specifically, section 143.021(c) states:

[A]n existing position or classification or *a position or classification created in the future by name or by increase in salary* may be filled only from an eligibility list that results from an examination held in accordance with this chapter.

Tex. Gov't Code Ann. § 143.021(c) (Vernon 1999) (emphasis added). The Civil Service Act's plain language expressly states that a new position or classification may be created "by name or by increase in salary." [3] This court has held that a vacancy occurs when a newly created position is established by ordinance. *City of San Antonio v. Edwards*, 974 S.W.2d 148, 151 (Tex.App.—San Antonio 1998, no pet.); *International Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122, 131 (Tex.App.—San Antonio 1991, writ denied). Therefore, when a new position is created by name, a vacancy arises. When the City, here, reclassified the fire captain positions as district chief positions, it created new district chief positions by name and thus vacancies in those positions. The captains were then promoted into the newly created positions, leaving vacancies in their former rank.

**Case Law:**

To support its argument that no vacancies arose as a result of the reclassifications, the City cites a number of cases involving promotions and draws distinctions between those cases and the one before us.[4] It concedes, however, that most of those cases offer little help in making that determination. Those cases each assume a vacancy. There are, however, two other cases that are helpful to the issue of whether the "reclassification" here resulted in a vacancy. The first is *Nichols v. Houston Police Officers Pension Bd.*, 335

S.W.2d 261 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.). In *Nichols*, the central issue was computation of retirement benefits. *Id.* at 262. A collateral issue, however, was whether an ordinance that purported to "create and recreate ... positions, classes, classifications and base pay" actually did create new classifications, requiring the City to fill those new classifications by competitive examination. *Id.*

In *Nichols*, the City, by ordinance, "creat[ed] and recreat[ed]" six positions in the Grade VI, Inspector of Police Classification. *Id.* The ordinance paid first-year Inspectors $625 per month, second and third-years $650 per month, fourth and fifth-years $700 per month, and those with over five years of service $750 per month. *Id.* Daut became an inspector in 1953. After the passage of the ordinance in 1957, Daut drew a $700 monthly salary as an inspector with four years experience. *Id.* at 263. Then in 1958, Daut retired as an inspector with over five years' experience, earning $750 per month in salary. *Id.*

The City argued that Daut's retirement benefits should be computed on the base pay amount of $625. *Id.* Its argument was premised on an older version of the Civil Service Act which provided that retirement benefits shall be 30% of the "base salary provided for the classified position in the police department." *Id.* Another section specified that all persons in each classification be paid the same salary plus any longevity pay they may be entitled to. *Id.* The statute also provided, like today, that "no classification now in existence, or that may be hereafter created shall ever be filled except by examination and that the City shall set up classifications, specifying the salaries for each classification." *Id.* The City argued that if the ordinance creates a

---

3. The Captains who were reclassified as District Chiefs, received both rank/position name changes, and received an increase in salary.

4. The cases the City attempts to distinguish from this case are *Lee v. Downey*, 842 S.W.2d 646 (Tex.1992), *Duckett v. City of Houston*, 495 S.W.2d 883 (Tex.1973), *International*

*Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122 (Tex.App.—San Antonio 1992, writ denied), *City of San Antonio v. Edwards*, 974 S.W.2d 148 (Tex.App.—San Antonio 1998, no writ), and *McGregor v. City of Houston*, 528 S.W.2d 620 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

new classification by increase in salary without filling such new classified positions by competitive examination, then the ordinance is void because it conflicts with the Civil Service Act. *Id.*

The court held that the ordinance did not contravene the Civil Service Act. *Id.* The court declared that "[t]he grade, position and classification remain the same ... The 'classification' here involved is clear: It is 'Inspector of Police, Grade VII.' That classification is retained notwithstanding expiration of time or the fact length of tenure is compensated." *Id.* at 263–64. In *Nichols,* the fact that Daut's actual classification, Inspector, did not change was the controlling factor in determining whether a new class, and thus a vacancy, arose, which was required to be filled through competitive examination procedures. Because the class rank did not change, the court reasoned, there was no new position to be filled. *Id.* at 263. In this case, however, the firefighters' classifications did change from captain to district fire chief. Under the reasoning in *Nichols,* the classification here did create a vacancy in the district chief rank that must be filled according to the statute's direction.

*City of Houston v. Reyes,* 527 S.W.2d 489 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) is another case that is instructive on the issue of whether the reclassification here created a vacancy. In *Reyes,* the City of Houston enacted an ordinance that changed the title of Emergency Medical Technicians (EMT) to Chauffeurs. *Id.* at 492. The ordinance specifically said that the change would not affect the status, classification, salary or tenure of the persons holding the EMT positions. *Id.* at 493. The issue in *Reyes* was whether the ordinance created new positions that were required to be filled from the eligibility lists. The Houston court considered Vernon's Civil Statutes Annotated, Article 1269m, section G (today Tex. Gov't Code Ann. § 143.021), which states: "[i]n the event any new classification is established either by name or by increase of salary, the same shall be filled by competitive examination in accordance with this law." *Id.* at 494. The court held that no new classification was established, finding that

> "[t]he effect of the ordinance was to merge the two formerly separate classifications. *The transfer of a position from one classification to another within the same grade level constitutes neither a promotion, demotion, nor a suspension of that person occupying such position.* No new classification was created, but positions in one classification were transferred to another classification within the same grade level. Such a transfer did not create a new position."

*Id.* at 495–96 (emphasis added).

The court in *Reyes* appears to have relied on the same principles that the court in *Nichols* relied upon. In both cases, the courts hinged their decisions on the fact that there was no change in the positions' grades or classifications. Here, because there was an upward change in classification from captain to district fire chief, there would logically be a promotion, leaving a vacancy in the captain positions. *See City of Fort Worth v. Nyborg,* 999 S.W.2d 451, 454 (Tex.App.—Fort Worth 1999, pet. denied). Accordingly, we find the reclassification, here, created vacancies in the district chief positions.

**Whether a Vacancy is Absurd Under These Facts:**

■ The City argues that holding that the reclassification created a vacancy would produce absurd results. As support for its position, the City attempts to distinguish this case from *City of Fort Worth v. Nyborg,* 999 S.W.2d 451 (Tex.App.—Fort Worth 1999, pet. denied). The City asserts that if *Nyborg* is read in such a way as to find that a reclassification results in the creation of new positions, we should not follow the result reached in that case because that result is absurd.

In *Nyborg*, the Fort Worth City Council adopted an ordinance that created one additional captain's position and deleted one lieutenant's position. *Id.* at 453. Kneblick was promoted to fill the new position. *Id.* Nyborg pointed out to the City that Kneblick's promotion created a vacancy in her lieutenant's position and that he was entitled to a promotion to lieutenant because he ranked first on the lieutenant's eligibility list. *Id.* The City and, later, the Fort Worth Firefighters and Police Officers Civil Service Commission rejected his claim. *Id.* at 453–54. Nyborg then filed suit in district court, asking that the Commission's decision be set aside. *Id.* at 454. Both parties moved for summary judgment on the sole issue of whether the ordinance created a vacancy in the lieutenant's position during the period Nyborg was eligible for promotion to lieutenant. *Id.* The trial court granted Nyborg's motion, finding that a vacancy arose in the lieutenant classification upon Kneblick's promotion to captain. *Id.*

On appeal, the Fort Worth court first defined the term "vacancy." "A vacancy occurs when an existing position is vacated or a newly created position is established by ordinance." *Id.* at 455 (citing *City of San Antonio v. Edwards*, 974 S.W.2d 148, 151 (Tex.App.—San Antonio 1998, no pet.) and *International Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122, 131 (Tex.App.—San Antonio 1991, writ denied)). The court, accordingly, found that the ordinance created a new captain's position, and therefore created a vacancy in the captain's position. *Id.* When Kneblick was promoted into the captain's position, she vacated her position as lieutenant, leaving a vacancy in the lieutenant's position. *Id.*

The court then went on to discuss whether the City was required to fill the vacant lieutenant's position. The City argued that it was not because the ordinance abolished the lieutenant's position before Nyborg was entitled to be promoted. The court, however, disagreed. In doing so, the court relied on the plain language of the Civil Service Act:

> If a municipality's governing body adopts an ordinance that vacates or abolishes a fire or police department position, the fire fighter or police officer who holds that position shall be demoted to the position immediately below the vacated or abolished position. If one or more positions of equal rank are vacated or abolished, the fire fighters or police officers who have the least seniority in a position shall be demoted to the position immediately below the vacated or abolished position. If a fire fighter or police officer is demoted under this subsection without charges being filed against the person for violation of civil service rules, the fire fighter or police officer shall be placed on a position reinstatement list in order of seniority. If the vacated or abolished position is filled or recreated within one year after the date it was vacated or abolished, the position must be filled from the reinstatement list. Appointments from the reinstatement list shall be made in order of seniority. A person who is not on the list may not be appointed to the position during the one-year period until the reinstatement list is exhausted.

*Id.* at 456 (citing Tex. Loc. Gov't.Code Ann. § 143.085(a)).

The City argued that section 143.085 was inapplicable to the case because the lieutenant's position was abolished before Nyborg was entitled to be promoted. *Id.* at 455. The court concluded, however, that when an ordinance abolishes a position, the officer with the least seniority in that position must be demoted to the position immediately below the abolished position and placed on a reinstatement list. *Id.* at 456. The ordinance at issue stated, "[U]pon the promotion of a Lieutenant into the newly created Captain's position, said Lieutenant's position shall be considered to be contemporaneously abolished." *Id.* at 455,

456. The court found that, based on this language, the lieutenant's position was not abolished until Kneblick was promoted to captain, at which point Nyborg was entitled to be promoted to lieutenant. *Id.* at 456. The court, therefore, held that the proper procedure in the case would have been to promote Nyborg to lieutenant, then demote him back to sergeant, and place him on the lieutenant's reinstatement list. *Id.*

The City, here, argues that applying the holding in *Nyborg* to the facts in this case would "[yield] a construction of the Civil Service Act and a result that is both foolish and absurd." The City emphasizes that no one here suffered any "negative ramifications" and that the "promotion/demotion construct is simply a useless drill and a waste of taxpayer dollars." This argument, however, is based on an improper understanding of the Civil Service Act.

The City here argues that to comply with *Nyborg*, it must have done the following:

> "(a) promote Flores, Ibarra, Elizondo and George to District Chief; (b) promote the next four individuals on the Captain promotion eligibility list; (c) promote the next four individuals on the Lieutenant promotion eligibility list; (d) promote the next four individuals on the FAO eligibility list; then (e) demote the four individuals who were just promoted to Captain and place them back on the promotion eligibility list; (f) demote the four individuals who were just promoted to Lieutenant and place them back on the promotion eligibility list; and (g) demote the four individuals who were just promoted to FAO and place them back on the promotion eligibility list."

The problem with this construction is that the statute does not require that the demoted firefighters be placed back on the promotion eligibility list. Rather, the statute dictates they be placed on a position reinstatement list. If a vacated or abolished position is filled or re-created within one year, the position must be filled from the reinstatement list, in order of seniority. Tex. Loc. Gov't Code Ann. § 143.085(a) (Vernon 1999). Only after the reinstatement list is exhausted, may other firefighters be considered for the vacancy. *Id.* Clearly, the firefighters here will receive a benefit by following the construct of the Civil Service Act as dictated in *Nyborg*, by being eligible first for any vacancy in a position they previously lost. Further, this construction is in line with the Civil Service Act's purpose. Tex. Gov't Code Ann. § 143.001(a) (Vernon 1999); *see also Klinger v. City of San Angelo*, 902 S.W.2d 669, 676 (Tex.App.—Austin 1995, writ denied) (overall intent of the Civil Service Act is to secure efficient, capable, non-politicized fire and police department personnel by means of civil service system that establishes promotions based upon demonstrated merit and fitness). We, therefore, find the result reached in *Nyborg*, and as applied here, is not absurd. By following *Nyborg*, the firefighters' rights under the Civil Service Act would be protected and the City would not be required to create twelve new classified positions. Unfortunately, however, by failing to follow the *Nyborg* procedure, in order to protect firefighters' rights under the Civil Service Act, the City is required to create and fill the twelve new positions.

**Was the City Required to Fill the Vacancy?**

■ The Civil Service Act requires that any vacancy be filled through certain promotional procedures. Section 143.036 requires that when a vacancy occurs, the vacancy must be filled according to the procedures outlined in the Civil Service Act. The Act mandates that the person next in line on the promotional list has the primary right to fill the vacancy. *See* Tex. Gov't Code Ann. § 143.036(e) (Vernon 1999); *International Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122, 131 (Tex.App.—San Antonio 1991, writ denied). Accordingly, because we find that the reclassification resulted in

a vacancy in the captain positions, then those positions must be filled according to the procedure outlined in the Civil Service Act.

## Did the City Adopt the Reclassification by Ordinance

The City additionally claims it complied with the Civil Service Act by establishing the new classifications in the budget ordinance. As summary judgment proof, the City offers a copy of a Comprehensive Fire FB–1 Report. The FB–1 is a document that is prepared before the budget ordinance's adoption. Other programs and their costs are added to the costs included in the FB–1 to form the following year's budget.

There are two problems with this document. First, the FB–1 is not the actual budget, but is simply a form used to calculate and define the following year's budget. Second, and most problematic, is that the reclassification took place on June 24, 1997. The budget, which the City asserts provided for the reclassifications, did not become effective until October 1, 1997, and accordingly could not have effectuated the reclassification.

## Should the Reclassification Be Declared Void Ab Initio?

The City finally requests that if the court finds that the reclassifications were in violation of the Civil Service Act, then the reclassifications should be declared void ab initio. The City suggests that doing so is the "truly equitable solution."

The Civil Service Act protects firefighters from losing their positions when the governing body wrongfully created those positions. The Civil Service Act provides that "[t]he failure of the governing body to establish a position by ordinance does not result in the loss of civil service benefits by a person entitled to civil service protection or appointed to the position in substantial compliance with this chapter." Tex. Gov't Code Ann. § 143.021(b) (Vernon 1999).

The City failed to establish the new district fire chief positions by ordinance. That failure, however, is irrelevant. The captains promoted to the district fire chief positions were next in line on the promotion eligibility list for those positions. They were, therefore, promoted in "substantial compliance" with the Civil Service Act provisions that outline promotional procedures. Thus, we refuse to declare the creation of the positions and the resulting promotions, as benefits to the former captains, void ab initio.

## Conclusion

We find the City's reclassification of captain positions to district fire chief positions created vacancies in the chief positions. And, because the collective bargaining agreement between the City and the Union is not specific enough to allow for a reclassification without following the Civil Service Act's requirements, the City must fill those vacancies in accordance with the Act. We, accordingly, overrule the City's issues and affirm the trial court's judgment.