**Jose F. OLIVARES and Nancy C. Olivares, Individually and as Trustee, Appellants,**

v.

**Birdie L. NIX TRUST, Appellee.**

No. 04–02–00942–CV.

Court of Appeals of Texas, San Antonio.

Nov. 5, 2003.

---

Pepos S. Dounson, San Antonio, for appellants.

Jeffrey T. Cullinane, Cathy Raba Turcotte, Douglas W. Sanders, Oppenheimer, Blend, Harrison & Tate, Inc., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Chief Justice.

This appeal is from the grant of the Birdie Nix Trust's ("BNT") Motion to Pay Judgment, under which the trial court ordered payment to BNT, as lienholder, from condemnation proceeds deposited in the registry of the court. The Olivareses present four issues on appeal: (1) whether Jose Olivares owned the property at the time BNT recorded its abstract of judgment; (2) whether the abstract of judgment substantially complied with the mandatory requirements to make it a valid and effective judgment lien; (3) whether BNT's judgment was dormant and barred by limitations when a writ of execution had issued on January 23, 1976, and no other writ was issued within 10 years; and (4) whether the trial court erred in denying the motion for adjudication of title of Nancy Olivares. We affirm the trial court's judgment.

## BACKGROUND

Between 1966 and 1969, Jose F. Olivares ("Jose Olivares") acquired title to three

properties near downtown San Antonio.[1] Tract 2 was encumbered by a recorded Vendor's lien and recorded deed of trust dated May 16, 1966, which secured a note payable to Ed Steves & Sons, Inc. ("Steves"), the prior owner. No release or transfer of these liens was ever recorded.

On November 24, 1975, BNT obtained a judgment against Jose Olivares and his father, Joe Olivares, Sr., in the amount of $20,921.45. BNT abstracted, recorded, and indexed the judgment in the Bexar County Real Property Records on March 15, 1976 in order to secure a judgment lien. The judgment lien attached to all property in Bexar County owned by Jose Olivares and his father.

On December 2, 1975, eight days after the BNT judgment was rendered, three non-judicial foreclosures were conducted, and the three tracts were auctioned to George Warner. On January 5, 1976, three substitute trustee deeds were filed as a record of these sales. According to the recitals in the substitute trustee deeds, Warner was also the foreclosing lienholder on these properties at the time of sale. However, the foreclosed deeds of trust held by Warner on Tracts 1, 2, and 3 were not recorded, and the alleged transfer or assignment to Warner of Steves's deed of trust on Tract 2 was also not recorded. Warner and his wife conveyed the three tracts to Nancy Carroll Olivares ("Nancy Olivares"), trustee [2], who is Warner's step-daughter and Jose Olivares's wife, in a warranty deed dated July 1, 1976 and recorded September 19, 1978.

On December 31, 1977, the Urban Renewal Agency of the City of San Antonio commenced condemnation proceedings against Jose Olivares on the three tracts of land, and an award based on the value of the property was deposited into the registry of the court. Jose Olivares, Nancy Olivares, and the Estate of George Warner appeared as owners and claimants. Seven lienholders asserted security interests in the properties at the time of condemnation. BNT filed a Plea in Intervention in the condemnation proceedings and sought to secure the proceeds in payment of its judgment lien. An appeal was made regarding the amount of the award, and the cause was transferred to the district court.

On February 16, 1979, a jury verdict concerning the value of the property was entered into judgment by the district court, and the increase in value was ordered deposited into the registry. Since the interest of each of the owners and claimants was not readily ascertainable, the court ordered lienholders to be paid by the district court upon proper application for withdrawal. The nature of these interests were to be later determined in a proper Motion for Adjudication To Question Title.

The determination of the priority of title and the payment of the condemnation proceeds sat dormant until March 27, 2002, when Nancy Olivares filed an Application for Withdrawal of Funds from the registry in Probate Court No. 1. The probate court refused to rule on the application, and on

---

1. The properties will be referred to as Tracts 1, 2, and 3. The three tracts are distinguishable by the first line of their legal descriptions, which begin as follows:
*Tract 1.* "A tract of land being 30' across West side of Lot 4, Block 1, New City Block 679";
*Tract 2.* A tract of land being the "North 111.5 feet of the East 38.15 feet of Lot four (4), Block one (1), New City Block 679"; and

*Tract 3.* A tract of land being the "West ½ of lot 3 (A 23), New City Block 679, in the City of San Antonio, Bexar County, Texas."

2. Mrs. Olivares is allegedly a trustee for a trust created for her son. No documentation evidencing this trust is in the record.

April 3, 2002, Nancy Olivares filed a Motion for Adjudication To Question of Title in the 225th Judicial District Court. On July 9, 2002, BNT filed a Motion for Payment of Judgment. Based on its findings [3], the trial court denied Olivares's motion, granted BNT's motion, and ordered payment to BNT on its judgment lien, accrued interest, and attorneys fees.

## LEGAL OWNERSHIP WHEN BNT'S ABSTRACT OF JUDGMENT WAS RECORDED

In their first issue on appeal, the Olivareses attack BNT's entitlement to condemnation funds on the grounds that BNT's judgment lien could not attach to the three properties. The Olivareses contend that Jose Olivares did not own the three parcels of real property when, on March 16, 1976, BNT recorded its Abstract of Judgment, and as such, BNT did not have a valid lien on the property or entitlement to condemnation proceeds.

The Olivareses contend that legal title was transferred from Jose Olivares to Warner through three substitute trustee deeds. These deeds purport to convey property to Warner in a foreclosure sale executed under the authority of three deeds of trust held by Warner. Both the foreclosure sale and the filing of the substitute trustee deeds occurred before March 15, 1976, when BNT recorded its abstract of judgment. However, there are no deeds of trust or appointments of substitute trustees on record to provide authority for the execution of the substitute trustee deeds.

A deed of trust does not pass legal title, but only equitable title. *Farm Credit Bank v. Snyder Nat'l Bank*, 802 S.W.2d 709, 713 (Tex.App.-Eastland 1990, writ denied). In a deed of trust, the mortgagor conveys only the equitable title and retains the legal title, whereas a sale transfers legal title. *Id.* In executing the foreclosure deed, the trustee merely effects the transfer of legal title from the debtor to the foreclosure purchaser. *Sandel v. Burney*, 714 S.W.2d 40, 41 (Tex. App.-San Antonio 1986, no writ).

However, the power of a trustee to sell the property is derived solely from the deed of trust and can only be exercised in strict compliance with the note and conditions of sale. *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex.App.-Corpus Christi 1996, no writ). The trustee must pursue the terms of the trust instrument, the provisions of law relative to the sale, and the details prescribed as to the manner of the sale. *Conversion Prop., L.L.C. v. Kessler*, 994 S.W.2d 810, 813–14 (Tex.App.-Dallas 1999, pet. denied). In addition, a purchaser at a foreclosure sale obtains only that title which the trustee has authority to convey. *Bonilla*, 918 S.W.2d at 21 (citing *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 17 (Tex.App.-Corpus Christi 1993, writ denied)). Where no deed of trust is recorded, the scope and existence of the trustee's purported authority of sale is unknown, and a subsequent purchaser is unable to determine what title, if any, the trustee has authority to convey. The same is true

---

**3.** The trial court found:
1) Jose Olivares was the legal owner of the three tracts when BNT obtained its judgment;
2) BNT's Abstract of Judgment constituted a valid judgment lien against the three tracts;
3) Jose Olivares continued to be the legal owner of the three tracts when the district court established the condemnation and market value of the three tracts; and

4) BNT's abstract of judgment was superior to any interest held by Jose Olivares, Nancy Olivares, George Warner, or the Estate of George Warner because the alleged transfer of legal title out of Jose Olivares was not properly recorded.

where the substitution of a trustee is unrecorded. Thus, a gap in the chain of title arises when the trustee executes a conveyance without recorded authority to do so. *See University Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (stating that the failure to follow the terms of the deed of trust can give rise to an action to set aside the trustee's deed).

■ Similarly, in the context of a judicial sale, Texas courts have held that without proof of his power to sell, a sheriff's or constable's deed must be treated as a nullity. *Atkinson v. Dailey*, 238 S.W.2d 584, 587 (Tex.Civ.App.-Amarillo 1951, no writ) (citing *Leland v. Wilson*, 34 Tex. 79, 1871 WL 7358 (1870)). If the decree and the order of sale fail to authorize such a sale as the sheriff undertook to make, no title passes thereby. *Id.* (citing *Trevino v. Fernandez*, 13 Tex. 630, 1855 WL 4831 (1855)).

■ Here, the purported deeds of trust securing a lien in favor of Warner for Tracts 1 and 3 were not recorded nor were they produced at trial. Furthermore, the purported transfer of the Steves deed of trust for Tract 2 to Warner was neither recorded nor produced at trial. Because the three substitute trustee deeds were unsupported, legal title to the three tracts did not pass to Warner. Jose Olivares held legal title [4] to the three tracts both when BNT recorded its abstract of judgment and when the land was condemned.[5] The Olivareses' first issue is overruled.

### STATUTORY COMPLIANCE OF BNT'S ABSTRACT OF JUDGMENT

In their second issue on appeal, the Olivareses contend that BNT's Abstract of

Judgment did not substantially comply with the statutory mandatory requirements to make it a valid and effective judgment lien. Specifically, the appellants contend that BNT's Abstract of Judgment 1) failed to show the address of Jose Olivares in the record of the suit and 2) failed to show the address of Jose Olivares, the nature of the citation, and the date and place of service.

■ The purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien. *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex.App.-Dallas 1988, writ denied). It is well settled in Texas that it is the judgment creditor's responsibility to insure that the clerk abstracts the judgment properly. *Caruso v. Shropshire*, 954 S.W.2d 115, 116 (Tex.App.-San Antonio 1997, no pet.); *Citicorp Real Estate, Inc.*, 747 S.W.2d at 929; *Tex. Am. Bank/Fort Worth, N.A. v. S. Union Exploration Co.*, 714 S.W.2d 105, 107 (Tex.App.-Eastland 1986, writ ref'd n.r.e.). Section 52.003 of the property code requires an abstract of judgment to contain the following seven elements:

(1) the names of the plaintiff and defendant;

(2) the birth date and driver's license number of the defendant if available to the clerk or justice;

(3) the number of the suit in which the judgment was rendered;

4. As legal title holder to the property subject to this appeal, Jose Olivares has standing in this appeal.

5. Additionally, the title insurance policy issued to the condemnor, the Urban Renewal Agency of the City of San Antonio, shows that

record title was held by Jose Olivares on March 26, 1976. The title company properly noted that Warner would own Tract 2 only if both the appointment of A. Zamora as Substitute trustee and the transfer of the Steves deed of trust to Warner were recorded.

(4) the defendant's address, or if the address is not shown in the suit, the nature of citation and the date and place of service of citation;

(5) the date on which the judgment was rendered;

(6) the amount for which the judgment was rendered and the balance due; and

(7) the rate of interest specified in the judgment.

TEX. PROP.CODE ANN. § 52.003 (Vernon 1995).

▬ Since a judgment lien is statutorily created, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach. *Caruso v. Shropshire*, 954 S.W.2d at 116; *Sarny Holdings, Ltd. v. Letsos*, 896 S.W.2d 274, 276 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Apostolic Church v. Am. Honda Motor Co., Inc.*, 833 S.W.2d 553, 554 (Tex.App.-Tyler 1992, writ denied); *Citicorp Real Estate, Inc.*, 747 S.W.2d at 929. Substantial compliance allows only a minor deficiency in an element of the abstract as opposed to omitting a statutorily required element altogether. *Id.* at 930.

▬ Section 52.003(4) requires the inclusion of the defendant's address, but provides in the alternative that "if the address is not shown in the suit, the nature of citation and the date and place of service of citation" are to be included. The conditional language triggering the alternative has not been addressed by Texas appellate courts. Most cases deal with the sufficiency of the provided address, such as *Apostolic Church*, 833 S.W.2d at 554, or whole omissions of both the defendant's address and the citation information, such as *Citicorp Real Estate Inc.*, 747 S.W.2d at 930. Here, BNT's abstract does not provide the defendant's address, but does provide citation information. Therefore, we

must consider whether the conditional language that allows the use of citation information is limited to situations where the underlying suit reveals no address for the defendant. A fundamental rule of statutory construction is that a court should first ascertain the Legislature's intent in enacting the statute as expressed in its plain language. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). However, where an application of a statute's plain language leads to absurd results, courts do not enforce the statute under a literal interpretation. *City of San Antonio v. Bullock*, 34 S.W.3d 650, 655 (Tex.App.-San Antonio 2000, no pet.) (citing *City of Amarillo v. Martin*, 971 S.W.2d 426, 428 n. 1 (Tex.1998)).

The birthdate and driver's license requirement is the only other requirement with conditional language. There the conditional phrase "if available to the clerk of the court" has been construed to mean "reasonably available to the clerk of the court." *Fred Rizk Const. Co. v. Cousins Mortg. & Equity Investments*, 627 S.W.2d 753, 756 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.). Where the condition is met, the birthdate and driver's license are mandatory. However, this condition has not been construed to require the clerk of the court or the judgment creditor to take the deposition of the judgment debtor to obtain a birthdate and driver's license number from the judgment debtor. *Id.*

The address requirement is slightly different. The statutory language makes the defendant's address mandatory. The conditional language provides an exception. The plain language of the statute applies the alternative requirement where the address of the defendant is "not shown in the suit." TEX. PROP.CODE ANN. § 52.003(4) (Vernon 1995). Generally, in the legal context, "to show" means "to set forth." Un-

der the statute, if the defendant's address it is not set forth in the suit, citation information may be used. The difficulty in this case is that two conflicting addresses were set forth.[6] However, the distinction between the two, designating the proper address for service, was not shown in the suit. Jose Olivares admitted that the address designation of his office changed, but there is no testimony that the second address was revealed as an updated address to BNT.

■ An abstract should be treated no differently where a defendant's address is not readily ascertainable from the underlying suit. Under such circumstances, citation information is sufficient to provide the requisite notice to third parties, thereby fulfilling the abstract's purpose in providing notice. Jose Olivares's and his father's addresses were not readily ascertainable because the documents in the underlying suit provided conflicting addresses. The Olivareses argue that BNT should have included either or both addresses in the abstract of judgment.

■ A creditor should not be left to decipher which address or how many addresses to include in the abstract of judgment, but should simply ensure that proper service is carried out and that the citation is sufficient to provide notice. Therefore, where the defendant's *definitive* address is not shown in the suit, the nature of citation and the date and place of service of citation provide substantial compliance with Section 52.003. TEX. PROP.CODE ANN. § 52.003 (Vernon 1995). BNT's abstract identifies the nature of the citation (citation by service), the date of citation (July 23, 1969 on Joe Olivares, Sr. and July 24, 1969 on Jose Olivares) and the place of citation (Bexar County,

Texas). Because BNT's abstract of judgment included all of the required citation information, the trial court correctly held that BNT substantially complied with the statute. The Olivareses' second issue is overruled.

## DORMANCY AND LIMITATIONS ON BNT'S JUDGMENT

In their third issue on appeal, the Olivareses contend that BNT's judgment became dormant and barred by limitations when no writ had issued within 10 years from the last Writ of Execution, thereby depriving BNT of any interest in the condemnation proceeds. BNT counters that its interest in the condemnation proceeds vested during condemnation and is unaffected by the subsequent dormancy and limitations of the underlying judgment.

■ Under Texas law, a real property judgment lien comes into existence by the recording and indexing of an abstract of judgment, provided that the judgment supporting the abstract is not dormant. TEX. PROP.CODE ANN. § 52.001 (Vernon 1995). The judgment lien continues for 10 years following the date of recording and indexing the abstract unless the judgment becomes dormant during that period. TEX. PROP.CODE ANN. § 52.006 (Vernon 1995). A judgment is dormant if a writ of execution is not issued within 10 years after the rendition of a judgment or within 10 years after the issuance of the first writ. TEX. CIV. PRAC. & REM.CODE ANN. § 34.001 (Vernon 1997). Once a judgment lien terminates by the expiration of the ten-year period, it can never be extended. *Burton Lingo Co. v. Warren,* 45 S.W.2d 750, 752 (Tex.Civ.App.-Eastland 1931, writ ref'd).

The record is clear that BNT's judgment is now dormant. No writ of execution was

---

6. The original petition indicates the address is 722 West Commerce while a subsequent affi-davit indicates the address is 332 West Commerce.

issued within ten years of its last execution on January 23, 1976. Tex. Prop.Code Ann. § 52.001(b) (Vernon 1997). Thus, the judgment lien created by the abstract of judgment expired before the trial court ordered payment to BNT from the registry. However, BNT's judgment lien was still in effect during the condemnation proceedings and when the condemnation award was deposited into the registry in 1977. Therefore, we must consider the nature of BNT's interest in the condemnation award, and whether the subsequent dormancy of BNT's judgment affected that interest.

A party to a condemnation proceeding need not have been the actual holder of the tract's title to have a justiciable interest in the tract. *Wynnewood Bank and Trust v. State,* 767 S.W.2d 491, 493 (Tex.App.-Dallas 1989, no writ) (citing *Buell Realty Note Collection Trust v. Central Oak Inv. Co.,* 483 S.W.2d 24 (Tex.Civ. App.-Dallas 1972), writ ref'd n.r.e., 486 S.W.2d 87 (Tex.1972) (per curiam)). It is sufficient that the party possessed a lien in the property at the time of the taking. *Id.* Once an award is made and the amount thereof is placed in the registry of the court to the order of the condemnees, and the land is occupied by the condemning authority, "the interest of each condemnee is established in and attaches to that fund as security for any possible damage suffered by reason of his dispossession." *Fort Worth Concrete Co. v. State,* 400 S.W.2d 314, 317 (Tex.1966) (addressing rights of landowner and lessee).

When a lienholder participates in a condemnation proceeding, he suffers no damage due to dispossession but instead due to the destruction of the lien itself. *Compare Fort Worth Concrete Co.,* 400 S.W.2d at 317. "[W]here the whole of the mortgaged property is taken in eminent domain proceedings, the mortgagee is entitled to all of the award or so much of it as is necessary to satisfy the mortgage indebtedness." *Buell Realty Note Collection Trust,* 483 S.W.2d at 26 (citing 27 Am.Jur.2d *Eminent Domain* § 257 (1996)). An impairment-of-security doctrine is, therefore, applicable in assessing a mortgagee's entitlement to condemnation proceeds where there was a partial taking of the mortgaged property. *Buell Realty Note Collection Trust,* 483 S.W.2d at 27 (holding that because there was no impairment, there was no entitlement to the proceeds). This doctrine suggests that the condemnation award is to be regarded as satisfaction of the mortgage indebtedness to the extent that the security interest has been impaired and the debt has become unsecured. Thus, when the condemnation proceeds were deposited, the interest of the condemnee lienholder vested in the condemnation proceeds as compensation for the destruction of the lien.

We recognize that a more recent case, however, states that when the condemnation proceeds are deposited, the "lien" of a mortgagee is "effectively transferred from the property into the deposit." *Wynnewood Bank and Trust,* 767 S.W.2d at 496. Nevertheless, the characterization of the condemnee's interest as a transferred lien in *Wynnewood Bank and Trust* is buried in the court's discussion of the condemnor's burdens and rights in condemnation. 767 S.W.2d at 496. This characterization is dicta, as the *Wynnewood Bank and Trust* court used the transferred lien characterization as a means of explaining that the condemnor's rights in the condemned property were not subject to the rights of lienholders who participated in the condemnation proceedings. *Id.* Furthermore, in support of this statement, the *Wynnewood Bank and Trust* court cites *Fort Worth Concrete Co.,* 400 S.W.2d at 317. However, the *Fort Worth Concrete Co.*

court did not characterize the nature of the condemnee's interest but instead addressed whether the dismissal of any or all of the condemnees would be improper and prejudicial after the condemnation proceeds had been deposited in the registry. 400 S.W.2d at 316. The court set aside the dismissal of a condemnee stating that the condemnee's interest had been "established in and attaches to [the condemnation] fund" and the "County Court had no authority to award any portion of the deposit ... to the exclusion of [the condemnee] until there had been a final determination of petitioner's compensable interest and damage, if any." *Fort Worth Concrete Co.*, 400 S.W.2d at 317. Additionally, although the RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 4.7 cmt a (1997) notes that the condemnation proceeds are sometimes viewed as "substitute collateral" and that the mortgagee's claim on them is sometimes described as an "equitable lien," the only Texas case cited for this proposition is *Wynnewood Bank and Trust. Id.*

We believe the better approach to the issue is the one supported by *Fort Worth Concrete Co.* and *Buell.* We hold that the rights of each condemnee, in accordance with their priority in the property upon condemnation, vest in the condemnation proceeds upon condemnation. If a lienholder intervenes in a condemnation proceeding and the condemnation award is deposited into the registry of the court, the lienholder's rights to the condemnation proceeds vest. The failure to take any additional action with regard to the judgment lien or the subsequent dormancy of the judgment supporting the judgment lien does not affect the rights that vested at the time of the condemnation proceedings. The Olivareses' third issue is overruled.

## NANCY OLIVARES'S MOTION FOR ADJUDICATION OF TITLE

In their fourth issue on appeal, the Olivareses contend that the trial court erred in denying Nancy Olivares's Motion for Adjudication of Title because Nancy Olivares established title to the properties and the condemnations funds in the registry through an unbroken chain of title. The trial court properly found that Jose Olivares held legal title. The Olivareses' fourth issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.